McBRIDE, Judge.
This is a workmen’s compensation suit. On May IS, 1957, during the scope and course of his employment as laborer with Southern Scrap Material Co., Ltd., plaintiff met with an accident when a large bar of iron fell upon his left foot. He now claims of the employer’s insurer workmen’s compensation at the weekly rate of $35 for a period not to exceed 400 weeks (less a credit of 22 weeks at the rate of $28.59), plus medical expenses, penalties under LSA-R.S. 22:658, and a reasonable fee for his attorney. Plaintiff averred in his original petition filed Januar}' 6, 1958, that the injury resulting from the accident was a chronic induration of the left foot which condition has permanently and totally disabled him from doing work of any reasonable character. On July 15, 1958, a supplemental and amended petition was filed on plaintiff’s behalf which alleges that in addition to the injury aforestated, he sustained a disabling right and a left inguinal hernia.
The defense is that by October 3, 1957, plaintiff had fully recovered from the effects of the injury to his foot; that he was paid during the term of his disability weekly compensation at the rate of $28.59 for 22 weeks; that nothing further is due him. Defendant sets up in its answer that if there is any hernia present, it either preexisted or was not caused by the accident; that no such injury and no complaints referable thereto were ever alluded to by plaintiff until the filing of the supplemental petition.
Defendant interposed an exception of prescription of one year to the supplemental and amended petition.
This case was initially allotted to Division “E” of the Civil District Court and Judge Frank J. Stich, presiding judge thereof, referred the exception of prescription to the merits and in due course tried the case, but before rendering judgment Judge Stich died. Thereupon, the matter was realloted to Judge Oliver P. Carriere of Division “H”, who ordered the testimony of the witnesses transcribed, and after a consideration thereof along with the other evidence in the case, rendered a judgment dismissing the suit. The exception of prescription was not passed upon. Plaintiff’s appeal from Judge Carriere’s judgment of dismissal is now before us.
At the outset, counsel for plaintiff argued that we should remand the case to the lower court for retrial, his theory being that Judge Carriere would have been impressed with the testimony of plaintiff and his witnesses had he seen and heard them testify, and that it was detrimental to plaintiff’s case for the judge to consider the matter on the “cold” record. We refuse to entertain any such contention for the reason counsel, who was cognizant of the fact that Judge Carriere intended to adjudicate the matter on the basis of the record and the memoranda of authorities filed on behalf of both parties with Judge Stich, neither made timely objection nor applied for a new trial after the judgment was rendered.
In view of our conclusion on the merits of the case, it is not necessary now to pass on the exception of one year’s prescription.
Plaintiff, a 40-year-old Negro, stated the bar of iron which caused his injury weighed 700 or more pounds, but we do not think that it weighed more than 150 pounds as there is more impressive evidence to that effect in the record.
Plaintiff steadfastly maintains his foot constantly hurts and that he cannot sleep at night because of that fact, and the injury has totally incapacitated him from returning to work.
Dr. Vincent P. Blandino, a general practitioner who is the doctor for defendant, *925 appearing as a defense witness, testified he saw plaintiff on the day of the accident, and his examination revealed that the patient had a traumatic laceration on the top of the left foot which measured about one-half inch in length without attendant involvement as the X-ray was negative for bone fracture. An infection developed after the laceration had been sutured which necessitated injections of an antitoxin serum, and when finally the wound healed a keloid (a tender scar) remained which was removed by Dr. Blandino and the wound resutured. Dr. Blandino treated plaintiff regularly every two or three days, the last time being on October 2, 1957, when he discharged plaintiff. His conclusion on the occasion of plaintiff’s last visit was that the injury had completely healed and the patient was fully able to return to all the duties of his occupation. Dr. Blandino stated that although plaintiff complained of stiffness and soreness in the foot, there were absolutely no objective findings to support the complaints. He explained that such a laceration as plaintiff had usually heals in from three to five weeks but that he treated plaintiff for five months altogether, the last being the month after the wound had healed. This, he said, was done in order to give plaintiff the benefit of any doubt because of his continuous complaints of pain.
The defendant paid workmen’s compensation to plaintiff at the rate of $28.59 per week for a period of 22 weeks, which term included the two weeks beyond the medical discharge given plaintiff by Dr. Blandino.
On May 24, 1957, while plaintiff was being treated by Dr. Blandino he called upon his own physician, Dr. William Fisher, a surgeon, who examined him and found a laceration on top of the left foot. Dr. Fisher agreed that at the time of this examination there was no evidence of a fracture, as the X-rays were negative. At the time Dr. Fisher estimated it would require between eight and twelve weeks for a complete healing.
Dr. Fisher appeared as the medical expert for plaintiff and stated that he rendered no treatment on the above-mentioned visit, but that he next saw plaintiff on October 10, 1957 (after Dr. Blandino’s discharge) and plaintiff was experiencing a tightness of the skin and some pain, and that his examination disclosed there was a chronic induration of the left foot as a result of the accident. The record does not disclose what is meant by a “chronic induration” but we gather it is a hardening or swelling of the flesh. The doctor estimated that from three to five months’ treatment was requisite under the circumstances.
Dr. Fisher saw plaintiff on numerous occasions until April 29, 1958, and apparently on that date his treatments terminated, but according to his report there was still pathology in plaintiff’s foot and he recommended an evaluation by an orthopedist. He thought plaintiff was unable to return to his work in his then present condition. On December 12, 1958, Dr. Fisher made another examination which showed that the old foot injury had healed but a small scar accompanied by swelling remained and that plaintiff continued his complaints of pain across the foot. Dr. Fisher said: “These symptoms are similar to the ones referred to earlier and since the injury and I have no explanation for these pain symptoms other than the possible aggravation of a second degree flat foot.”
On February 25, 1958 (within the period he was being treated by Dr. Fisher), plaintiff was sent to Dr. Irvin Cahen, an orthopedic surgeon, by defendant for examination and appraisal. Dr. Cahen states plaintiff made no complaint other than having pain in the left foot. The doctor had plaintiff disrobe, giving him an over-all physical examination from an orthopedic standpoint, but he noted no disability in the foot and there was nothing present which could support the complaint of pains or which would prevent plaintiff from returning to work. Dr. Cahen was positive there was no correlation between the flat-footedness and the injury, and, incidentally, he *926 mentioned that he saw no reason for the tight bandage plaintiff was then wearing.
So much for the expert testimony. Plaintiff mentioned he had called upon a Dr. Samuel Romano on October 8, 1958, but this physician was not called as a witness, and in view of this it would be a fair presumption that Dr. Romano, if he had been called upon to testify, would have given evidence unfavorable to plaintiff’s cause. The absence of Dr. Romano was not explained. It also appears plaintiff went to the orthopedic clinic of Charity Hospital in June 1958, and the hospital’s report which is in evidence recites plaintiff has no trouble with his foot “except itching.” The report also contains a notation to the effect: “Plaintiff says nerves is his biggest trouble.”
We do not believe that there is any pathology in plaintiff’s left foot which can be said to be a residual of the accident. Dr. Blandino and Dr. Cahen cannot account for the asserted pain and neither can plaintiff’s own expert, Dr. Fisher, who admitted he has no explanation for the pain other than the possible aggravation of a second degree flat foot. Dr. Fisher never did go on record as saying that there was any such aggravation.
Plaintiff’s claim asserted for the first time in the supplemental and amended petition filed July 15, 1958 (more than a year after the accident) that he also sustained in the accident a totally and permanently disabling right and left inguinal hernia need not be the subject of any protracted discussion. Strangely, plaintiff made no complaint to anyone that his groin was injured until May 9, 1958 (about a year after the accident) when Dr. Fisher, upon examining plaintiff, discovered the double hernia. Plaintiff gave the ludicrous explanation that the foot pain was of such severity he did not pay any attention to pain in any other part of his anatomy. He claims he noticed a painful knot in the region of the groin three days after the accident, but he attributed that condition to “bad blood,” meaning a venereal disease. At no time during the five months Dr. Blan-dino treated him did plaintiff indicate or call to the doctor’s attention that he had pain other than in the left foot, and neither did plaintiff make any mention of the fact that there was a painful lump in his groin to Dr. Fisher upon his first visit to that physician on May 24, 1957. Nor did he tell Dr. Cahen of this other condition in the course of the examination of February 25, 1958, which was conducted while plaintiff was disrobed. Moreover, plaintiff said nothing to his own physician, Dr. Fisher, about any other injury until the latter discovered the alleged herniated condition about a year subsequent to the accident.
A circumstance which cannot be overlooked is that in October 1957 Dr. Fisher sent plaintiff to Charity Hospital for a blood test, as plaintiff’s history showed he had undergone surgery in 1951 for the removal of an inguinal bubo, which is a mass in the groin. The scar from this operation still remains. Dr. Fisher did not require the testing of the blood in connection with any complaints of plaintiff regarding the groin, but the doctor sought to ascertain why the foot was so slowly responding to treatment, he suspecting a venereal disease might be the cause. However, the blood tests proved negative.
Dr. Fisher could not say positively that there was causal connection between the accident and the hernia — in fact he could not say whether they were sustained at the same time as the one on the right is much more advanced than the one on the other side. He speculated that plaintiff’s stooping and straining to remove the heavy piece of iron off his foot might have been the causative factor.
A plaintiff in a workmen’s compensation suit must, like the plaintiff in any other suit, prove his case with reasonable certainty. The weight of the medical testi *927 mony convinces us plaintiff was not disabled because of the injury to his foot after the date Dr. Blandino discharged him. His own physician could not account for his complaints of pain. It may be that plaintiff has a double hernia which totally disables him from returning to work, but there is no indication, much less adequate and convincing proof, that the hernia was incurred as a result of the accident. The facts that plaintiff made no complaints and that the hernias were discovered only a year later upon routine medical examination weigh heavily against him. We believe the plaintiff has failed to prove his case by a preponderance of evidence and with legal certainty.
It is true that plaintiff was given a pre-employment physical examination before being accepted by Southern Scrap Material Co., Ltd., but this fact cannot of itself have such probative value as to support plaintiff’s claim that the hernia resulted from the accident. Any number of other causes might be responsible for his present condition.
Plaintiff originally claimed compensation at the rate of $31.38 per week, but in a second supplemental and amended petition he alleges he worked 40 hours per week at regular time and 4 hours overtime, making a 44-hour work week at a weekly wage of $54, thus making the compensation rate the maximum of $35 per week. From the copies of the payrolls in evidence, it appears that plaintiff commenced working for Southern Scrap Material Co., Ltd., in July 1956 earning $1 per hour. It appears that the work week consisted of 40 hours and that whenever he worked overtime, he was paid one and a half times the hourly rate. In November 1956 the hourly rate was increased to $1.05, and the payroll shows that whenever plaintiff worked a 40-hour week his regular pay was $42, but if he worked overtime his additional pay therefor was computed at one and one-half times the hourly rate. We are convinced after considering the testimony of the yard foreman to the effect that the normal work week at Southern Scrap Material Co., Ltd., was 40 hours, or 5 days of 8 hours each, in conjunction with the payroll record, that plaintiff’s claim that his work week consisted of 44 hours is absolutely unfounded.
 In computing the amount of compensation to be paid an injured workman, the amount earned for overtime work should not be included in the daily rate of pay as overtime pay is intermittent and cannot be said to be a part of his regular daily earnings. It is well settled that under the Workmen’s Compensation Act, as amended, the rate of compensation allowed an injured workman is no longer to be based upon his average weekly wages but upon his daily rate of pay. Johnson v. W. L. Richeson & Sons, La.App., 53 So.2d 192. This plaintiff earned $8.40 per day or a total of $42 for a 5-day week. Taking that amount as the base, 65 per cent thereof would amount to $27.30 for the weekly compensation, and defendant having paid compensation to plaintiff at the rate of $28.59 for 22 weeks, the duration of disability, the claimant is entitled to nothing further.
Finding no error in the judgment appealed from, it is ordered, adjudged and decreed that the same be affirmed.
Affirmed.
JANVIER, J., takes no part.