SAMUEL, Judge.
This is a suit under the Louisiana Workmen’s Compensation Act for total and permanent disability resulting from injuries suffered by the plaintiff in an accident which *644 occurred while he was employed by the defendant. Plaintiff has appealed from a judgment in favor of defendant and dismissing the suit.
There is no dispute over the fact'that an accident and injury did occur in the course and scope of plaintiff’s employment as a longshoreman. He was working on the river front in New Orleans moving heavy bales of rubber on a two wheel hand truck. While so engaged on December 19, 1960, and while he was holding the hand truck loaded with a bale of rubber, another such bale fell from the net or sling, hit the side of the ship, bounced and struck plaintiff in the area of the right side of his head and neck and right shoulder. The blow threw him a distance of about 12 feet. He landed on his back, his head striking the floor of the dock, and momentarily was rendered unconscious. In less than an hour he was seen by Dr. Richard Faust, regular physician and industrial surgeon for the defendant. Dr. Faust treated the plaintiff from the date of the accident through January 13, a total of 25 days, and discharged him as able to return to work on January 16.
On January 27, 1961, plaintiff saw Dr. Vernon R. Kroll. At that time he complained of some loss of hearing in the right ear, stiffness of the neck, pain in the right side of the abdomen and pain upon motion in the lower back. Upon examination this doctor found two bilateral inguinal herniae, one, the larger, on the right side and the other on the left side. As a result of the examination Dr. Kroll was of the opinion that plaintiff should not return to work. Dr. Kroll again saw the plaintiff on May 2, 1961 at which time he was of the opinion that plaintiff should not return to work because of the presence of the two inguinal herniae.
We are satisfied that, except for the presence of the herniae, plaintiff was able to return to his work as a longshoreman on January 16, 1961. Therefore the only question before us is one of fact: Did the accident either cause the two herniae to develop or aggravate pre-existing herniae? The trial court was of the opinion that plaintiff had failed to carry his burden of proving either fact by a fair preponderance of the evidence.
Dr. Faust, who was the treating physician and who also testified as an expert, saw and treated the plaintiff on 12 occasions during the 25 days between the date of the accident, December 19, 1960, and the date of his discharge, January 13, 1961, although plaintiff visited the doctor’s office and received treatment on more than these 12 occasions during that time. The doctor testified as follows:
On the first visit, the day of the accident, plaintiff complained of pain at the top of the shoulder blade in the back (over the right supra spinous muscle), strain of the muscles at the bottom part of the shoulder blade on the right (infra-scapular muscles) and a contusion of the back of the head (the occiput). The next day he also complained that his ear was stopped up. When seen two days later, he complained of pain in the muscles that go from the head to the neck obliquely (right sternomastoid). On the following day, December 23, plaintiff said he was better. He received diathermy on that date for the two areas of the right shoulder blade and received treatment on December 24 and 27 at which time he complained of soreness in the lower shoulder blade and deafness in the right ear. He was referred to an ear, nose and throat specialist whom he saw the following day.
On December 29, plaintiff was again seen by Dr. Faust at which time he indicated the ear treatment had helped and also that his neck was much better as was the right side of his back. On December 30, he had a sore neck. On January 3, when next seen, he complained of pain in the lower thoracic region. On January 4, he felt better and on January 5, he complained of soreness of the right mid neck muscle and below the right shoulder blade. On January 6, he indicated his back pain was less but had moved downward to just above the belt line *645 in the back (mid-lumbar area). On January 9, plaintiff returned for treatment and said his back pain had moved up again (to the lower thoracic area) and that his neck was also hurting. He received diathermy treatment on January 10th, 11th and 12th. On January 13, which was the last time Dr. Faust saw plaintiff, he said his worst pain was in the right neck muscle and he also had some pain in the upper lumbar area. The doctor discharged him that day (a Friday) to return to work on Monday, January 16. At no time during the 12 visits plaintiff made to Dr. Faust between December 19, 1960, the date of the accident, and January 13, 1961, the date he was discharged, was this doctor ever able to find any obj ective symptoms for plaintiff’s many varied complaints. All examinations made on each occasion were negative.
According to Dr. Faust, plaintiff never complained to him of any pain in the groin or in the general area of the abdomen, nor did he ever indicate or imply that he had pain or discomfort in that area. For that reason Dr. Faust never examined the groin and never discovered the herniae.
Plaintiff testified that on his second or third visit he did complain to Dr. Faust of pain in the area of the groin and side. But we do not believe that part of his testimony. In view of all of his other complaints, the care with which they were noted and the treatment he received therefor, it is inconceivable to us that the doctor would have failed or neglected to find the herniae if plaintiff had made any complaint indicative of their presence.
Three medical experts, Dr. Faust, Dr. A. N. Houston and Dr. Samuel Karlin, all of whom qualified as experts with extensive experiences in herniae surgery, testified for the defendant. Dr. Kroll, a general surgeon, testified for the plaintiff.
Drs. Faust, Karlin and Houston were of the opinion that while herniae not caused or aggravated by trauma are not necessarily painful at inception, in every case of traumatic hernia or of traumatic aggravation of a pre-existing hernia, both of which involve the sudden stretching or tearing of tissue, pain in the area affected will result either immediately or within a short period of time, hours at the most. Generally they were of the further opinion that while it is conceivable for an injured man to he suffering so much other severe pain he would not notice this pain immediately, he would certainly have complaints in the area of the groin within a very short period of time. In this particular case they thought that the other injuries were of such a minor nature that plaintiff would necessarily notice and complain of the groin pain while under Dr. Faust’s treatment if the accident actually did cause the herniae or aggravate preexisting herniae. These doctors were therefore of the opinion that the accident neither caused the herniae nor aggravated preexisting herniae.
Dr. Kroll was of the opinion that the accident either caused the herniae or aggravated herniae which existed prior to the accident. He was also of the opinion that herniae are not necessarily painful at inception.
Our jurisprudence has accepted the medical opinion to the effect that traumatic development of a new hernia, or traumatic aggravation of an old one, necessarily causes pain and, in the absence of additional explanatory facts, where such pain is not shown the plaintiff has not borne his burden of proving that the industrial accident caused or aggravated the hernia. La Fleur v. Fidelity and Casualty Co. of New York, La.App., 132 So.2d 895; Cage v. Fidelity & Casualty Co. of New York, La.App., 117 So.2d 923; Waters v. L. L. Brewton Lumber Co., La.App., 120 So.2d 842; Knox v. Ethyl Corp., La.App., 53 So.2d 443.
We are in agreement with the finding of the trial court.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.