## MARLER v. INDUSTRIAL LUMBER CO., Inc.
### No. 1341.

Court of Appeal of Louisiana. First Circuit.
June 11, 1934.

Julius T. Long, of Shreveport, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

ELLIOTT, Judge.

Blanchard Marler alleges that he sustained a hernia, while engaged in the work and service of Industrial Lumber Company, Inc., producing in him a permanent, total disability to do work of any reasonable character. He brought suit against Industrial Lumber Company, Inc., claiming compensation at the rate of $6.82 per week for a period of 400 weeks, less payment for 28 weeks received.

Defendant denies the alleged liability. It admits that plaintiff claimed to have strained himself while in its service and was thereby disabled, and that it had paid him compensation for 28 weeks and 2 days on said account. It alleges that, if plaintiff was actually injured as he claimed to have been, he had recovered, and that it had paid him all it owed him. It denies that plaintiff sustained and has a hernia, and prays that his demand be rejected.

There was judgment rejecting plaintiff's demand. The plaintiff has appealed.

The right to recover compensation in this case depends on the credibility of certain witnesses. The lower court, referring to two witnesses called by the plaintiff who claimed to have witnessed his injury and testified to that effect, says that they "did not impress the court," but did not explain why such was the case. Plaintiff contends that, as no reason was given for the statement, we should not be influenced by it, and argues in favor of their credibility, etc.

Plaintiff claims to have been injured while getting out cross-ties. Work of that kind is heavy and requires lifting. According to plaintiff, he was 25 years of age at the time, and had never suffered any previous injury of the kind. His statement as to what he was doing at the time is as follows: "I cut a tree down and cut a tie off of it and it fell across another log and I went to slide the end of this tie cut off this other log and the ground was wet and my foot slipped and I felt a sting and when I got up I felt weak and sick at my stomach and went and sat down. There was two fellows working with me and I told them I hurt myself and they asked me how and I told them and took my trousers off and showed them. There was a thing punched out in the lower part of my side and they told me not to work any more and there was another fellow about 100 yards

from me and I showed him this thing and he said you had better report to the doctor." He further testified that the accident occurred at about 11 o'clock a. m.

According to the testimony, plaintiff was assisted in his work by a partner, who was the uncle of his wife, and therefore plaintiff's uncle by marriage. Plaintiff's partner testified on the trial that he was distant 10 or 12 feet from the plaintiff at the time of his alleged injury. He said: "The first thing I knowed, I saw him catch his side. I was off about 10 or 12 feet and I said what is the matter. He said I hurt myself and I said how? And he said I went to lift that cut off." He further testified that he saw where plaintiff had slipped; that after plaintiff got up he turned sick at his stomach and vomited. He then went on to say that "there was another fellow off about 50 yards and I said go and see him, he knows what is the matter and this fellow said you are ruptured. His name was Rob Snorton."

Another witness, brother-in-law to plaintiff, testified that he went out in the woods to the place where the plaintiff and his partner were at work, and while there watching them, "that he (meaning plaintiff) moved that tie cut and his foot slipped and he said his side hurt. It was stinging him and when he got up he turned sick at his stomach and vomited."

This witness, testifying further, said:

"Q. You say he complained of hurting himself? What did he do after that? A. He layed around there a while and another fellow was working in the woods and this fellow told him he had a rupture.

"Q. Did you see this other fellow look at him? A. Yes sir, I was with him."

The witness further testified that this other fellow was distant from them about 100 yards.

As defendant denies that plaintiff sustained a hernia, the burden of proof was on the plaintiff to establish the fact by acceptable testimony producing belief and which the court feels justified in taking to be true. Plaintiff, his brother-in-law and uncle all say that this fellow, Snorton, looked at plaintiff and said to him, "You are ruptured." In view of defendant's denial, this party was an important witness for the plaintiff, but he was not called. The reason for his absence was not explained. Defendant produced four physicians on the trial who testified, one after the other, that plaintiff had no hernia. This fellow, Snorton, even if a layman, could have been called in chief or in rebuttal to sup-

port the affirmative of the fact claimed by the plaintiff. The failure to call him or account for his absence creates an unfavorable impression which we cannot overlook.

■ It is a fact generally known that a traumatic hernia, produced by a sudden act, such as too heavy lifting and straining, accompanied by a fall, is followed by immediate pain and a feeling of sickness and weakness with incapacity for exertion of any kind. Consequently, if plaintiff had been injured as claimed, and a party was seen in the woods 50 or 100 yards distant, who it was thought should be consulted about the matter, it is improbable that plaintiff would have been told by his uncle, "Go and see him, he knows what is the matter." The party would have been called to come to the plaintiff.

Another matter. Plaintiff's brother-in-law testified that plaintiff lived about 2½ or 3 miles from the place where he was injured and had been walking backwards and forwards to his work. The evidence justifies the conclusion that plaintiff had walked to his work that morning and had no way to get home except by walking back. The witness testified that he also lived about 2½ or 3 miles from the place where plaintiff was injured, and the two likely lived in the same neighborhood, because the witness says that the plaintiff visited him at his (witness') place of residence the night following the alleged injury. This witness further testified that in going out to the place in the woods where plaintiff was at work he rode horseback; that he remained at the place about 30 minutes or an hour after the injury, and that he then got on his horse and went home, leaving plaintiff sitting on the ground in the woods at the place where he had been injured.

It is difficult for us to believe that this witness would have ridden off, leaving his brother-in-law, with whom he was apparently on friendly terms, in the woods injured in the way claimed with no way to get home except by walking. There is nothing to indicate that his uncle stayed with him or assisted him to get home. This relation is contrary to the ordinary human conduct, and therefore difficult to believe. Ordinarily, the brother-in-law and uncle in such a situation would have assisted plaintiff to get on the horse, and plaintiff would have ridden home and the owner of the horse would have walked.

Then again it does not seem to us reasonable that plaintiff, after getting home, would have felt able and disposed, if he had a few hours before sustained a traumatic hernia, to take a further walk that night, the exact distance of which does not appear, in order to pay this witness a social visit. Plaintiff himself testified that he did not go to see a doctor until 3 or 4 or 5 days after he claims that he received his injury. With these facts and circumstances in mind, we have no difficulty in concurring in the statement of the lower court that the lay testimony, which the plaintiff advances in support of his alleged injury, is not impressive.

Plaintiff called two physicians who testified that they had examined him and upon examination found him with a hernia. Defendant then called four physicians who testified, one after the other, that they had examined plaintiff, and that he had no hernia. Two of them in stating the result of their examination say that they found no hernia, but their testimony, taken as a whole, is about as emphatic as that of the other two, who claimed more directly that he did not have a hernia.

Plaintiff, after the delay mentioned, called to see Dr. Mangham. It appears that Dr. Wade was present. Dr. Wade says: "He came in with symptoms suggestive of traumatic hernia. He came to see Dr. Mangham first and he asked me to see him with him." This physician says, upon examination some 3 or 4 or 5 days after the alleged injury, plaintiff was found not to have a hernia, that he had recently examined him again, and that he has no hernia.

Dr. Mangham, speaking of the same date and time, says: "He came there along in April, claiming he got his side hurt, and I examined him and he had a little bulging on the right side and kind of protruded around that region. To give him the benefit of the doubt I put him on insurance for a while and I examined him in November and all the evidence of the bulging or protrusion was gone except a little relaxed condition of the muscle." He testified that plaintiff has no hernia.

■ Two of the physicians called by defendant were in its actual service or salary or in that of its insurance carrier. With the admonition of our Civil Code, art. 2282, in mind on that subject, and even though the testimony of these physicians as to whether or not plaintiff has a hernia be regarded as a matter of opinion, the preponderance of the testimony on the subject does not support the existence of a hernia. The most that can be said is that plaintiff received a temporary

hurt, the effect of which passed away after a few weeks. It therefore follows that defendant's denial has not been overcome.

Plaintiff urges us to fix some rule as to what evidence is sufficient in a case of hernia. Claims to having sustained a hernia cannot be determined according to a fixed rule. Every case must be judged according to the facts found in the record.

The judgment appealed from is in our opinion correct. Judgment affirmed.