In November, 1946, plaintiff, as an employee of defendant, was engaged in driving a team of mules and while he was hooking a tong to a log, one of the mules kicked him on the forehead. He was paid compensation for five and a fraction weeks and dismissed by the doctors employed by defendant to treat him as able to return to work.
After going to Jasper, Texas, where he employed counsel and was examined by a physician there, he filed this suit for compensation at $20 per week for a period not exceeding 400 weeks.
The petition alleges that:
1. His skull was fractured when the mule kicked him.
2. His eyesight has been materially affected by the blow to the head.
3. He suffered internal hemorrhage to his right ear and has been partially deaf since the accident.
4. Both sides of the jawbone were fractured, which has caused him pain, suffering and disability.
5. He has suffered edema of the brain, which has caused him deafness and throbbing headaches.
The defendant in answer admitted the employment and on the trial of the case admitted that plaintiff was injured on November 25, 1946 and had been paid compensation to include January 4, 1947, at which time defendant contended that he was completely recovered and able to return to work.
This is an appeal from a judgment of the District Court rejecting plaintiff's demands.
[1] The extent of plaintiff's disability is the single major point of controversy. The defendant contends that plaintiff suffered no permanent injury and was able to return to work when discharged by the doctors on January 4, 1947. On the contrary, the plaintiff urges that he is totally and permanently disabled.
For plaintiff, Dr. J.N. Seale, a physician residing at Jasper, Texas, testified that he made a single examination of plaintiff on February 7, 1947; that his examination revealed a long, healed scar on the right side of plaintiff's forehead, extending from the hairline to the right upper eyelid; that the plaintiff had ptosis of the right eyelid; that plaintiff's right eye was abnormal to the extent that there was a marked photophobia (fear of lights) and that the distant vision of the right eye was abnormal to the extent of 20/50. He further testified that there was evidence of an old fracture of the jawbone near the joint. With reference to the skull, he testified that "both anterior and posterior lambdoid sutures of the skull were markedly widened." He testified that the blow "would cause swelling of the brain" and "it would widen the suture lines and that the bone plates (of the skull) would pull apart." He found no fracture of the skull but testified that the x-ray picture showed an abnormal separation in the bony structure of the skull, not caused by the kick but coming later as a result of the brain's swelling to such an extent that it forced the separation or widening between the bones of the skull.
When plaintiff was carried to the sanitarium at Many, Louisiana immediately after the accident, he was attended by Drs. F.X. Letarde and S.F. Fraser, who testified that during the following four or five *Page 280 
weeks they re-dressed the wound, removed the sutures and the wound healed, and that he was discharged by them at the end of approximately five weeks as able to return to work.
Drs. Letarde and Fraser made x-ray pictures soon after the injury in November, 1946 and again in April, 1947. There was no testimony from either plaintiff's or defendant's medical witnesses that any of these x-rays showed that the skull was fractured when the mule kicked plaintiff as was alleged in paragraph 10 of his petition. Likewise, there was no proof that the injury caused "an internal hemorrhage to his right ear" or that "both sides of the jawbone was fractured" as set forth in paragraphs 12 and 13 of plaintiff's petition.
On the question of whether swelling of the brain could cause widening at the suture points or separation of the skull bone, Dr. Fraser testified: "It is a known scientific and medical fact that the skull does not give." He further testified: "Edema can't cause separation of suture in the human. It can occur in prenatal cases. These sutures or that bone is interwoven — interlaced. The bone is interlocked just as some mechanical unit was brought together to make it strong. He concluded that in his opinion it was impossible for edema to cause separation of the sutures.
Drs. Letarde and Fraser testified that neither the November, 1946 or April, 1947 x-rays revealed any separation of the bones of the skull. Both of these doctors testified that in their opinion, the x-ray pictures introduced by plaintiff also showed no separation of the bones of the skull.
The fact that plaintiff's scalp was cut and peeled back indicates that the blow was glancing rather than direct in character. Drs. Letarde and Fraser had the better opportunity of observing plaintiff's condition, particularly in the days following the injury. Dr. Fraser testified that he found no evidence of excessive blood pressure or unusual eyeground and that these findings, in his opinion, ruled out any marked edema. Both these doctors testified that they found no ptosis of the right eyelid.
Dr. Seale did not see plaintiff from the date of the examination until the trial and his principal knowledge of plaintiff's condition was obtained from the history given him by plaintiff.
The testimony of plaintiff and lay witnesses introduced by him was that he was always healthy and able to work prior to the November injury, but that since that time, he had complained of his head and stated to various people that he was unable to do hard manual labor. While we are reluctant to disbelieve plaintiff's own testimony that since the injury he has suffered headaches and been unequal to a return to work, the testimony in the record fails to substantiate any of the several major injuries and resulting conditions set forth as the basis of his claim for total and permanent disability. The petition alleges that plaintiff's "skull was fractured when the mule kicked him." There was no testimony at the trial that plaintiff's skull was fractured when the mule kicked as thus alleged. The further fact that plaintiff's petition sets forth that both sides of the jawbone were fractured and yet made no complaint of this sort to any of his doctors or made other proof of such injury, also indicates a tendency to overstate and overplay his injuries and the resulting disability.
On the question of plaintiff's major claim, that the blow caused an edema of the brain, which condition forced a widening of the sutures and separation of the skull bones, we find that the preponderance of the evidence is with the defendant rather than the plaintiff.
[2] On cross-examination, plaintiff testified that he had received $1,100 in settlement of a compensation claim with a former employer. His wife placed the time of this former settlement as 1944. The record does not disclose what portion of plaintiff's body was injured. Certainly the fact that a workman has received compensation for an earlier injury does not disqualify him from recovering compensation from a new injury if same is established by competent evidence. However, in a case where the determination of the extent of injury depends largely upon the statement of the plaintiff, the fact that he has received a prior compensation settlement may *Page 281 
be taken into consideration along with the other evidence in determinating whether or not the new claim is well founded.
The District Judge, who had the benefit of seeing and hearing the witnesses and personally observing the plaintiff, gave judgment for defendant. Having found the record sustains this judgment, it is affirmed, with costs.