GLADNEY, Judge.
Melburn B. Teekell brought this suit under the Workmen’s Compensation Act, alleging he sustained a hernia in the course .and scope of his employment. The Campbell Construction Company, Inc. and its insurer, Trinity Universal Insurance Company, were named as defendants. Following a trial on the merits the trial judge rendered a judgment rejecting plaintiff’s demands, hence this appeal.
The issues which are presented to this ■court for decision are: Did the plaintiff sustain his burden of proving an accident within the course and scope of his employment? Is plaintiff disabled as a result of the hernia allegedly sustained by him on September 4, 1962? Did the hernia exist prior to his employment with Campbell' Construction Company, and if so, was it aggravated ?
The employee testified his work required that he drive a truck with barrels of ice water to be delivered at different places on the job and that in unloading a barrel weighing about two hundred pounds he felt a severe pain and burning on his right side; that he returned to headquarters, reported the injury and asked to see a doctor, and-when there was a delay in his transportation, he drove off in his own automobile to see Dr. Bienvenu in Lafayette.
There were no witnesses to the accident Teekell says he sustained. Certain related facts in his testimony were contradicted by fellow employees W. A. McGuire and W. P. Bonvillain. Counsel for appel-lees also sought to impeach plaintiff’s credibility through his deposition taken in connection with another workmen’s compensation claim for total and permanent disability, based on an accidental injury on January 12, 1962, pending in Evangeline Parish. The trial court sustained an objection to the admissibility of the deposition for the purpose of showing he had five previous compensation settlements, but allowed a record on the point under LSA-C.C.P. Art. 1636. One of the claims was for a double and a hiatus hernia. In O’Banion v. Hillyer-Deutsch-Edwards, Inc., La.App., 34 So.2d 278 (2d Cir.1948) it was held that where the extent of the injury depends largely upon the statement of the plaintiff, the fact that he has received a prior compensation settlement may be taken into consideration along with the other evidence in determining whether the new claim wa9 well founded. The evidence should have been admitted for the purpose of showing the existence and extent of the injury in the pending suit.
Medical testimony was given only by Dr. Lawrence E. L’Herrison of Coushatta and Dr. James Richard Brown of Shreveport. Plaintiff sought medical aid from Dr. Willis Bienvenu of Lafayette, but on the following date, September S, 1962, at plaintiff’s request he was transferred to the L’Herrison Clinic and Hospital before the examination was complete. Dr. Bienvenu did not testify.
Dr. L’Herrison testified Teekell was admitted to his clinic on September 5, 1962, *449 complaining of abdominal pain. On reexamination on September 7th he located a post operative incisional type hernia in a previous scar above the umbilicus on the right. The patient was discharged from the hospital on that same date but examined again on September 11th and 25th, 1962, and again on March 12, 1963. The doctor was of the opinion the plaintiff should not do lifting until the hernia is corrected by surgery. He testified the hernia in the incision could have easily resulted from the operation rather than from any trauma afterwards. As to whether the hernia was caused by the alleged accident of September 4, 1962, he gave the following testimony:
“Q. You, of course, have no way of knowing whether this man’s hernia was a result of the operation or whether or not he strained himself subsequently and herniated?
“A. You might state that I did not notice — did not pick up the hernia the first time that I saw him, however, the hernia was apparent.
“Q. I understand that you found the hernia, but as I say, you have no way of knowing whether it was as a result of the operation or whether it was the result of a trauma subsequent to the operation?
“A. That’s right.
“Q. And I take it from the fact that you didn’t find it the first time that it apparently is a pretty small hernia ?
“A. Yes, a small hernia.
“Q. And in order to evidence itself, it was necessary to make him strain and then you could find it?
“A. Yes, sir.
“Q. Now, you recommend that this man have an operation on his hernia, but do you feel that it is absolutely necessary for him to have it operated on before performing work ?
“A. I don’t believe anybody will let him work where they have workmen’s compensation unless he does have it repaired.”
Plaintiff was examined by Dr. Brown for evaluation purposes and a hernia was not diagnosed until a second examination. Dr. Brown described the injury of which complained as a post operative ventral hernia, a hiatus hernia, meaning a hernia beneath the diaphragm in the linea alba about two inches above the umbilicus.
In 1959 petitioner had been operated on for the repair of bilaterial inguinal hernia and the hiatus hernia by use of a midline incision. Dr. Brown said the subject hernia probably would have occurred within three or four weeks after surgery and that mid-line incision operations were notorious in the upper quadrant of being susceptible to hernias. As to its causes, he testified:
“Well, usually there is a little serum accumulation following the surgery where the catgut has failed to hold. Catgut is notoriously undependable and lots of people have what we call a reaction to gut, or catgut, not a pus reaction, but a reaction to a foreign body such as animal gut which is, of course, obtained from sheep intestines. The catgut per se is not from a cat. Sheep intestines which — well, there is no use in going into the method of production of it — but the body at that time recognizes it as a foreign object and rejects it, building up an effusion around it which does impair or delay or- — well, I should say more impair proper healing of the two opposing sides of the wound.”
The witness stated that laborers with this type of hernia constantly perform heavy work without pain and the hernia is very common in the colored race, and it was *450 his opinion that in the case of plaintiff he did not think there was much danger of a great enlargement of this small opening.
As we understand the conclusions of the medical examiners, neither testified with any degree of certainty that the alleged employment injury caused the hernia or an aggravation of an existing hernia. Dr. L’Herrison said he would not hire plaintiff until the hernia was fixed. Dr. Brown was of the opinion Teelcell was not disabled and should be able to perform heavy work without pain as do many other laborers.
Plaintiff testified he sustained injury, accompanied by pain, gave notice to his employer and had the prompt attendance of a physician. His testimony on the trial of the case was subjected to close scrutiny as to the occurrence of the injury by strain or the aggravation of a pre-existing hernia in the course of the employment, and the extent of disability. The employee elected not to call any lay witnesses, including neighbors, wife, or relatives to substantiate his complaints of disability. He admitted he was not examined for hernia when accepted for employment. His credibility was seriously attacked and doubt was cast upon the occurrence of disability on September 4, 1962, particularly as to whether or not there was a pre-existing hernia, which had been aggravated by the employment accident.
In a compensation case the plaintiff has the burden of proof, and he is required to establish his claim with reasonable certainty by a preponderance of the evidence, but he does not have to prove causal connection between disability and employment to an absolute certainty, the establishment of the cause of injury by a reasonable probability being sufficient. Bernard v. Louisiana Wild Life and Fisheries Commission, La.App., 152 So.2d 114 (3rd Cir.1963) (writ refused 244 La. 664, 153 So.2d 881). Where the employer has denied that the employee sustained hernia, the employee had the burden to establish the existence by acceptable testimony producing belief. Marler v. Industrial Lumber Company, Inc., La.App., 155 So. 266 (1st Cir.1934). It has also been held that when the matter at issue is a traumatic development of a new hernia or traumatic aggravation of an old one, which necessarily causes pain and, in the absence of additional explanatory facts, where such pain is not shown, plaintiff has not sustained the burden of proving the industrial accident caused or aggravated a hernia. Morgan v. Strachan Shipping Company, La.App., 150 So.2d 643 (4th Cir.1963). This court in the case of Sneed v. Lumbermen’s Mutual Casualty Company, La.App., 126 So.2d 421 (2d Cir.1960) adopted the comment of the court in Broussard v. Dumas Chevrolet Company, La.App., 120 So.2d 863, 867, (4th Cir.1960) with citation of numerous authorities, reading:
“ * * * our jurisprudence is perfectly clear and to the effect that an accident or injury in a compensation case may be established by the testimony of the claimant alone if there are corroborating circumstances.”
Our review of the record discloses substantial support for the judge a quo’s holding that plaintiff had failed to meet the burden of proof imposed upon him. The issues so decided were largely of a factual nature and involve the credibility of the testimony of plaintiff, upon which rested the outcome of his case. Manifest error is not disclosed.
Accordingly, the judgment is affirmed, at appellant’s cost.