204 So.2d 615 (1967)
Joseph POINDEXTER
v.
SOUTH COAST CORPORATION and Standard Fire Insurance Company.
No. 2794.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 1967.
*616 Orrett, Donahue & Collins, and Robert A. Collins, Metairie, for plaintiff-appellee.
Adams & Reese, John T. Cooper and Edward J. Rice, Jr., New Orleans, for defendants-appellants.
Before SAMUEL, HALL and BARNETTE, JJ.
BARNETTE, Judge.
The plaintiff Joseph Poindexter seeks recovery of maximum workmen's compensation benefits with statutory penalty of 12 percent and attorney's fees. A judgment was rendered in his favor against South Coast Corporation, his employer, and Standard Fire Insurance Company, its insurer, for compensation in the sum of $35 per week for 400 weeks with 12 percent on such amount thereof as may be due and payable since February 3, 1966, to date of payment, plus $115 medical expenses and $1,500 attorney's fees. The defendants have appealed suspensively and plaintiff has answered the appeal seeking an increase in attorney's fees.
Joseph Poindexter, a 53-year-old illiterate Negro man, had been employed as a common laborer by South Coast Corporation, a plantation enterprise in Terrebonne Parish, continuously all of his adult life. The only indication of an interruption of his long tenure of service resulted from a tractor accident in April, 1965, in which he sustained minor injuries and a hernia. Hernioplasty was done, and he was discharged on June 14, 1965, and returned to work. He was paid compensation for that period of disability.
The exact date of the alleged accident which forms the basis of this suit is somewhat in doubt. Plaintiff alleged and testified that it occurred about the second week in January, 1966. He said he went to the doctor the next day. His wife also testified that it was in the second week of January, and that he went to the doctor the next day. However, according to the doctor's records, plaintiff did not see him until February 3.
Benny Boudreaux, identified as a foreman over the labor crews, testified for defendants. He could not interpret his own records and his testimony concerning the days in January, 1966, which plaintiff worked is wholly unreliable. The trial judge finally established from the information furnished and an examination of Boudreaux that plaintiff did work at least until January 30. The trial judge stated:
"I think you have an absolute way of knowing when it happened, unless the witnessesother witnesses are falsifying, because your records show that the man worked through January. I think the *617 last day was the 30th, if I am not mistaken."
A fellow laborer, Lawrence Murray, testified that the morning after the plaintiff left work, he, Murray, obtained from "the boss," on plaintiff's request, a slip to allow plaintiff to go to the doctor. Murray stated further that he knew plaintiff did go to the doctor on that date from a conversation between himself and plaintiff after he returned from the doctor's office. As noted, the doctor testified the date of plaintiff's first visit was February 3. At the trial, which was on March 2, 1967, plaintiff testified that he reported the accident to Boudreaux immediately and had not worked since, saying: "One year and one month now." From all of these circumstances we conclude that plaintiff's alleged accident was on or about February 2, 1966.
Plaintiff testified that he was engaged with other laborers in removing crossties from a roadbed. While in the performance of this task he said he heard something "pop" in his back and felt severe pain and fell three times. None of his coworkers could remember that plaintiff actually fell, but they did verify that he stopped working and he stated he felt too bad to continue with his work. One fellow worker, Daniel Adams, testified that he remembered seeing plaintiff stoop over and remain in that position "about three or four minutes." They all testified that plaintiff left the job and went home complaining of feeling bad and that he has not worked a day since.
Defendant's labor foreman and chief witness on the accident issue, Benny Boudreaux, denied that plaintiff reported that he had suffered an accident on the job. In fact he could not recall giving anyone a slip to allow plaintiff to see a doctor.
Boudreaux's testimony on this and other issues was confusing and evasive. Later during the course of the trial Boudreaux was caught in a deliberate misstatement of fact. The trial judge dismissed him from the witness stand with these remarks, "I ought to put him in jail because he is a perjurer. If you wish to make a charge of perjury, you can do it."
One of the plaintiff's fellow workers testified that Boudreaux told him he would lose his job if he testified in plaintiff's behalf. This may explain why plaintiff's fellow workers all testified that they did not see plaintiff fall.
In any event the trial judge found that plaintiff did suffer an accident while in the course of his employment as alleged. We can find no error in that finding of fact.
The trial judge did have considerably more difficulty determining the exact nature of this accident.
The plaintiff testified that the strenuous work which he was attempting to perform caused the injury to his lower back from which he is disabled. On the other hand it is the defendants' position that plaintiff suffered a mild stroke and this was the cause of his disability. They contend that the stroke was not related to plaintiff's employment hence he should not be compensated for the disability resulting from it.
We are fully cognizant that the plaintiff in a workmen's compensation case, as in other cases, must carry the burden of proof. He must prove an accident in the course of and arising out of his employment and the disability resulting therefrom. He need not prove or disprove the pathology of his disability, but only that the disability resulted from the unexpected and unforeseen event which occurred in and arose out of the performance of his duties of employment. This proof must be supported by a preponderance of the evidence.
Two of the medical witnesses who testified in plaintiff's behalf found objective indications that he did suffer a disabling back injury.
*618 Dr. Davis W. Aiken, a general surgeon, testified that his examination revealed muscle spasm on plaintiff's lower back as evidenced by a failure of the lumbar lordotic curve to reverse upon forward flexion. He also found loss of sensation on the back of the right thigh, right calf, and lateral aspect of the right foot.
Dr. Roy M. Montalbano, a general practitioner, stated that he performed a straight leg raising test on plaintiff and the results were positive. He too found muscle spasm in plaintiff's lower back.
Both doctors, along with Dr. Kenneth Saer who also testified in plaintiff's behalf, admitted that plaintiff suffered from a degenerative arthritic condition of the spine which preexisted the occurrence of February, 1966. They did not state that plaintiff's accident did in fact aggravate this condition and cause plaintiff's pain, however, they stated that such could have been the case.
Two of the medical witnesses who testified for the defendants were of the opinion that plaintiff suffered a mild stroke. One, Dr. Wilson Eroche, testified that this caused plaintiff's disability.
None of the medical experts, except possibly Dr. Eroche, expressed an unqualified opinion of the exact cause of plaintiff's disability nor specifically the nature of his disability, but the preponderance is clearly that he is disabled from performing the duties of his employment at hard labor. The trial judge in his reasons for judgment found it impossible to determine if plaintiff had suffered a stroke or an actual physical trauma. However he stated that in either case plaintiff was entitled to recovery.
The medical testimony fails to establish with certainty that plaintiff suffered a stroke, however, there is sufficient evidence to sustain a conclusion that a mild stroke might have contributed to plaintiff's disability to continue hard labor and that it resulted from the accident. The medical experts are in agreement that a stroke can be caused by hemorrhage resulting from a ruptured blood vessel, which is consistent with the overexertion of hard labor. In view of this testimony we cannot say the trial judge was in error in finding a connexity between the accident and the disability.
The controlling principles to be applied in cases of this kind are fully discussed by the Supreme Court in Danziger v. Employers Mut. Liability Ins. Co. of Wis., 245 La. 33, 156 So.2d 468 (1963). These principles were applied by us in our recent decision in Griffin v. Employers' Liability Insurance Company, 186 So.2d 349, 351 (1966). There we said:
"The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen's Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results, for it to be compensable. [Citing numerous authorities.]"
Here we have a workman with an unusually good record of consistent hard labor for 35 years, who suddenly in the course of strenuous labor, suffered an injury which rendered him incapable of performing the duties of his employment. We think the language of the court in Lyons v. Swift & Company, 86 So.2d 613, 621 (La. App.2d Cir. 1956), is particularly pertinent and we quote therefrom as follows:
"Although there is a conflict in the medical testimony as to whether plaintiff's pre-existing condition was aggravated by the trauma to his abdomen, yet, to our minds one of the strongest, single factors supporting plaintiff's claim is that until the very date and moment *619 of the accident and for several years prior thereto, he was in apparent good health, robust, strong, able to do and doing heavy, strenuous labor. From that day and moment forward he has been totally and completely disabled and unable to perform any work of a reasonable character. There must have been a cause for this sudden change. Plaintiff has advanced a substantial reason for such change. The evidence preponderates in his favor. * * *"
We do not mean to imply that an employee is entitled to workmen's compensation merely because he suffers disability while in the pursuit of the duties of employment. But when the disability results from an accident or other unusual event arising out of and incident to his employment, except for which the disability in all probability would not have occurred, we are of the opinion that this is a compensable injury.
By stipulation it was agreed that if compensation is allowed, the correct weekly allowance would be $35.
This brings us to the question of statutory penalty and attorney's fees. We need not consider the question of notice, which is prerequisite to the imposition of penalty and attorney's fees, since the defendants in their answer to plaintiff's petition admit notice, demand, and refusal to pay.
We find the defendants were arbitrary and capricious in their failure to pay compensation. They neglected or refused to inquire into the cause of plaintiff's disability. Apparently they did nothing but give him some sort of slip to see Dr. Eroche. Notwithstanding Dr. Eroche's certification of disability for the purpose of welfare assistance and defendants' knowledge of plaintiff's disability, the only action they took was one of eviction from the plantation house which he had occupied for many years incident to his employment. They requested no medical examinations and took no steps to determine the cause of his disability until within ten days of trial when, in preparation of their defense, he was examined by Dr. Samuel B. Nadler, an internist, and Dr. Russell C. Grunsten, an orthopedist. Through their witness Boudreaux, defendants attempted to disclaim responsibility for Dr. Eroche's treatment. The issuance to Poindexter of a slip to get medical treatment was never categorically denied by Boudreaux, but he inferred that if he gave a slip it was not for an accident, but for other causes for which defendants were not responsible. Defendants attempted to show that plaintiff was Dr. Eroche's private patient. However if this had been true there would have been no occasion for Dr. Eroche to give them a report without plaintiff's permission. At any rate there is no evidence that defendants ever acted on medical advice from Dr. Eroche or any other doctor. Apparently defendants relied entirely on the assumption that there had been no accident, probably based on information from their foreman Boudreaux. Obviously some event had occurred to disable their employee after 35 years of hard labor. We think defendants, at least, should have obtained medical advice to determine the cause. This they did not do, but merely assumed there was no work-related cause. The penalty provisions of the statutes providing penalties and attorney's fees were enacted to discourage employers and insurers from such attitudes of indifference to the distress of injured employees.
The provisions of LSA-R.S. 22:658 impose upon the insurer the liability of 12-percent damages and reasonable attorney's fees as penalty for failure to pay compensation within 60 days after receipt of notice and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause. LSA-R.S. 23:1201.2 imposes upon the employer who "is not covered by insurance" the same penalty. Since the employer's liability in this case is covered by insurance the penalty must be imposed under the provisions of *620 LSA-R.S. 22:658, which applies only to the insurer. Therefore the judgment which casts the employer and the insurer in solido for payment of the penalty and attorney's fees must be amended so as to cast only the insurer for this part of the judgment.
The allowance of $1,500 for attorney's fees is a matter of discretion. We find no abuse of discretion by the trial judge in this respect and find no reason to disturb the award. The plaintiff's prayer for an increase must, therefore, be denied.
There appears to be no issue on the amount of medical expense nor the amount fixed for expert witness fees.
For these reasons, the judgment appealed from is amended so as to cast only the defendant Standard Fire Insurance Company for the 12-percent penalty and the attorney's fees and as amended in this respect is affirmed. In all other respects the judgment as rendered against both defendants, South Coast Corporation and Standard Fire Insurance Company in solido is affirmed at defendants' cost.
Amended and affirmed.