BARNETTE, Judge.
Plaintiff, Raymond M. Sanchez, instituted this suit against defendants Haase Construction Company, Inc., and its insurer, Continental Casualty Company, to recover workmen’s compensation benefits for total permanent injuries allegedly resulting from an accident occurring September 17, 1965, during the course of plaintiff’s employment as a carpenter for defendant Haase. From a judgment in favor of defendants dismissing plaintiff’s suit plaintiff has appealed.
It is undisputed that on the afternoon of September 17, 1965, plaintiff fell from a scaffold while engaged within the course and scope of his employment as carpenter for defendant. The issue in this case is whether or not plaintiff’s fall aggravated or accelerated a pre-existing back condition for which he would be entitled to benefits under the workmen’s compensation act.
As in all workmen’s compensation cases, the burden here is upon the plaintiff to establish either a disability resulting from the injuries sustained or the aggravation or acceleration of a pre-existing condition which has resulted in disability. Clevinger v. Continental Insurance Companies, 211 So.2d 718 (La.App. 2d Cir. 1968); Poindexter v. South Coast Corporation, 204 So.2d 615 (La.App. 4th Cir. 1967); Teekell v. Campbell Construction Company, 160 So.2d 447 (La.App. 2d Cir. 1964); Davis v. Western Casualty and Surety Company, 159 So.2d 309 (La.App. 2d Cir. 1963).
Plaintiff testified that on the afternoon of the date of the accident he was working on a scaffold; that the scaffold was “wobbly” and it slipped, causing him to lose his balance and fall backwards, striking the base of his spine on a stone floor. He testified that he hurt from the waist down but his immediate concern was his right knee which he thought he had broken. When he returned home he telephoned his foreman, Salvadore Viccari, who instructed him to see the company physician. The next morning plaintiff went to Dr. A. N. Sam Houston, who treated him for a sprain of the medial collateral ligament and peroneal muscles of the right leg. Plaintiff remained under the treatment of Dr. Houston for a sprained right knee until October 13, 1965, when he was discharged.
There is a conflict of testimony as to whether or not plaintiff complained to Dr. Houston of back pain. Dr. Houston testified from notes which he made on the occasions that he saw plaintiff. He stated that his notes do not reflect that plaintiff ever complained to him of any injuries other than the' injury to the right knee. On rebuttal, plaintiff vigorously testified that he did complain to Dr. Houston of back pain the first time Dr. Houston examined him (the day after the accident) and that Dr. Houston treated him for a cut on the lower part of his back. He also stated that Dr. Houston took X rays of his back on this occasion.
Plaintiff returned to work the following Monday. He testified that he was placed on lighter duty because of his injuries and worked in this capacity until December 3, 1965, when he quit the employment of defendant. He testified that he quit his job with defendant because the pain in his back had become too severe.
*233 On December 6, 1965, plaintiff went to Dr. James L. Le Noir, an orthopedic surgeon, complaining of pain in the center of his back. Dr. Le Noir’s examination revealed that he was suffering from a slight narrowing of the fifth disc space and diagnosed his condition as a herniated fifth lumbar disc. On December 7, 1965, a mye-logram was performed which proved positive for herniated disc. Dr. Le Noir then performed a laminectomy to remove the herniated portion of the disc.
There is some conflict in the testimony as to whether or not the plaintiff complained to his employer of his back condition. Plaintiff testified that in the course of conversation with Viccari two or three weeks prior to his leaving the employment of defendant, he informed Viccari that his back was in pain. He also testified that he informed Viccari that the back injury was the reason for his leaving the employment of defendant.
On cross-examination Viccari admitted that he did recall a conversation with plaintiff concerning plaintiff’s back but could not remember any details; however, he fixed the time of this conversation to coincide with plaintiff’s quitting his job.
The plaintiff had sustained an injury to his back approximately six years prior to the accident in question while working for another employer. On that occasion he was treated by a Dr. Bloch, who, according to plaintiff’s testimony, diagnosed his condition as a “pinched nerve.” According to plaintiff, the condition cleared up within four or five weeks. His employer continued to pay full wages until he was able to resume fully his duties of employment.
There can be no doubt that the plaintiff did have a serious back condition when examined by Dr. Le Noir on December 6, 1965, approximately 12 weeks after his fall, and that a laminectomy was performed. The question then is whether the plaintiff has successfully carried the burden _ of proof by showing a causal connection between the back condition and the fall on September 17, 1965.
This fact question was resolved by the trial judge at the conclusion of the trial against the plaintiff. The trial judge expressed the opinion in his reasons for judgment that the plaintiff was using this case in an attempt to force his employer and the insurer to pay for the laminectomy which was necessary because of the previous injury. In reaching this conclusion the trial judge was influenced materially be the testimony of Dr. Houston, the treating physician following the accident.
The case was tried three and a half years after the accident and Dr. Houston’s treatment. Dr. Houston was therefore dependent upon his notes made at the time, and the trial judge properly observed that Dr. Houston could not have been expected to have an independent recollection of the case. Dr. Houston testified that his notes of the history given, the patient’s complaints, the diagnosis, and the treatment were all made at that time and that it is his practice to make note of all pains and symptoms of which a patient complains. He said a complaint of back pains following a fall would have been of such significance that he would certainly have made note thereof. From the absence of any reference in his notes to complaint of back pains by plaintiff, Dr. Houston was rather positive that at no time did he so complain.
The trial judge also found as a fact that the plaintiff had not complained to his foreman of back pains until just before quitting his job about the first of December. He also attached some significance to the fact that plaintiff himself thought the pains were attributable to the prior injury.
Dr. Le Noir, an orthopedic surgeon, testified as an expert on behalf of the plaintiff, and Dr. Richard W. Levy, a neurosurgeon, testified as an expert on behalf of the defendant. They were in agreement that a fall such as plaintiff described could cause an aggravation of the pre-existing back condition and would be painful. *234 They agree also that the pain would not necessarily be immediate, but would become manifest within a few days to two weeks. There is no significance therefore to be implied from the fact that the plaintiff did not report pain to Dr. Houston the day following the fall, but we agree with the trial judge that it is highly significant that it was not reported to Dr. Houston or his therapeutic assistant at some time during the course of treatment which ended October 13, 1965.
The onset of pain and its relationship timewise to the September 17 accident is very important. The plaintiff’s testimony does not help us much in determining when, after September 17, he began to have back pain and numbness of the left leg, but he did say that it was not very severe at first and that he thought it would go away. He began again to wear a surgical belt which was prescribed following his initial back injury about six years before. He said that he associated the occurrence of pain with the old injury and for that reason made no report of it to Dr. Houston.
Dr. Le Noir testified that when he first saw plaintiff (December 6) “he was some better, and discs are notoriously quiescent at times, and remissions and exacerbations will occur. He was not at his worst at that time, but he was having pain.” He was questioned concerning the period over which such a disc condition as he described would develop and answered:
“Nobody knows, truly, the cause of the disc problem. My personal belief is that no disc ruptures with one single episode, that disc problems occur gradually, that there is as much as a twelve, fifteen, twenty year period of gradual deterioration before the finale. The finale may be totally inconsequential, with little force involved, and even stooping can do this. The gradual deterioration of the disc that precedes it means that the joint wasn’t a normal joint before it ruptured, it wasn’t a normal joint after it ruptured, and it isn’t a normal joint after it’s operated.
******
A But nobody knows positively what causes it.
******
THE COURT:
Doctor, is there any way that you can connect this disc injury with either one of the incidents that the plaintiff has described, the one he described as of September 17th, 1965 or the one where he went to see Dr. Bloch six years prior, for which he wore a corset?
A I have no positive proof, and I only have the history the man gives me. I have no factual knowledge that would bear—
THE COURT:
In other words, in your expert opinion, you can’t advise the Court whether or not this disc injury came from the first episode some six years prior to this or whether it came from the incident under investigation of September 16th, 1965?
A I can give you my view as to what I think could have happened, but as far as any factual evidence that would really be—
THE COURT:
Well, that’s what we want, that’s why you’re here, tell us.
A It’s my belief that since this man had at that time originally, back six years before, pain in his leg and pain in his back, in the same leg, in the same back, the same type of pain and then he has a recurrence, that *235 this is very probably the same disc that was bad at that time, that he actually had a ruptured disc in his initial episode. Now, discs notoriously and characteristically come and go. If the pressure is off the nerve, it can be quiescent for long periods, and then it can recur. Recurrence-exacerbation-remission is one of the characteristic features of herniated disc. It’s not an all-or-nothing, and so I would believe that if you reconstruct this in any sensible way you would have to say that he had this originally, and that this would have been an aggravation of a pre-existing problem.”
Dr. Levy examined the plaintiff on October 10, 1966. In taking the history from the plaintiff he made note of plaintiff’s statement that the onset of back and left leg pain was indefinite. He found no residual except a depressed left ankle reflex and numbness of the left foot and leg and estimated a partial permanent disability of 5 to 10 percent as a result of the ruptured disc and surgery.
We attach material significance to the expert opinion of Dr. Le Noir that the “finale,” the proverbial straw which breaks the camel’s back, could be an “inconsequential” thing, such as a “stooping” motion. It is probable, but certainly speculative, that the “finale” could have been some such occurrence at some time after September 17 or October 13 which could have produced the pain described on and immediately prior to December 6. We would not deny plaintiff’s recovery on probability or speculation, but, on the other hand, he carries the burden of proof by a preponderance of evidence, which must be more than probability and speculation. We must conclude that he has failed to carry that burden. We do not find a manifest error in the trial judge’s finding of fact.
For these reasons the judgment appealed is affirmed at appellant’s cost.
Affirmed.
Rehearing denied.
BARNETTE, J., is of the opinion the rehearing should be granted.