SWIFT, Judge.
The plaintiff, Charles Malbrough, filed this suit against the defendant, Insurance Company of North America, the workmen’s compensation insurer of his employer, Fischbach & Moore, Inc., endeavoring to recover the maximum workmen’s compensation benefits, plus penalties and attorney’s fees, alleged to be due him by reason of an accident which occurred on March 21, 1965.
The defendant answered, admitting the plaintiff reported the occurrence of an accident while employed by its insured on March 21, 1965, that resulted in an injury to his left ankle. However, it denied he injured his back in that accident, which is the basis of the plaintiff’s present claim of total and permanent disability.
The Pan American Life Insurance Company filed a petition of intervention in which it alleged the plaintiff was paid $1,223.18 on a claim for benefits under the provisions of a group policy issued by it through the New Orleans Electrical Health and Welfare Plan. It further alleged that no benefits were due under this policy for sickness or injury covered by workmen’s compensation laws, and prayed for reimbursement of the amount paid to plaintiff if the Insurance Company of North America is held liable to him in this suit for workmen’s compensation benefits, its claim to take precedence over plaintiff’s in the judgment.
Judgment was rendered in favor of the defendant, Insurance Company of North America, dismissing the plaintiff’s suit at his cost. From that judgment the plaintiff has prosecuted this appeal.
The record discloses that on March 21, 1965, Charles Malbrough was employed as an electrician for Fischbach & Moore, Inc. During the course and scope of his employment he tripped on debris and wire causing him to fall and sustain an injury to his left ankle. He was treated that day at St. Charles General Hospital and his leg was placed in a cast. The medical report from the emergency room shows a diagnosis of a severe sprain of his left ankle. No complaint of back pain is indicated thereon. After five days, Malbrough returned to his employment earning his regular hourly wage, and continued to perform electrical work with various employers until the end of December, 1967. Oil January 1, 1968, plaintiff was admitted to Ochsner Foundation Hospital, and two days later he underwent a lamenectomy for a degenerated L-4 disc.
Malbrough testified that his left ankle was his principal complaint of pain, but his back also hurt “a little from the fall.” He said he was first seen by Dr. Nelson and then by Dr. Vial. On April 7, 1965, he was examined by Dr. Walter Brent. At this time he claims he mentioned to the doctor he was having “a little trouble” with his back, but thought it was probably from walking on his crutches. When he was in one position too long his back ached and he had difficulty straightening up. He testified he had not experienced this prior to March 21, 1965. Plaintiff further testified that on August 16, 1965, he consulted Dr. S. J. LoCoco with reference to low back pain which extended into his legs. *412 Heat treatments and aspirin were prescribed. On March 2, 1966, he was seen by Dr. Vernon Kroll who recommended continuance of heat treatments and aspirin and prescribed a board be placed under his mattress. Plaintiff stated that on December 11, 1967, he was examined by Dr. John D. Jackson at Ochsner Foundation Hospital, who recommended immediate hospitalization. However, because of the fear of an operation he postponed his admission to January 1, 1968, when myelogram studies and a lamenectomy were performed. Mal-brough testified he returned to light work about March 15, 1968. Since his surgery there have been very few jobs he could undertake, and it has been necessary for his co-workers to assist him with heavy work. He said that he was still experiencing pain in his back and legs, although the severity is less.
Malbrough admitted that he suffered a back injury about 1955 as the result of lifting a manhole cover. A corset was prescribed to be worn as needed, which he wore off and on for about three months.
There is discrepancy in the plaintiff’s testimony as to when he first complained of back pain after the March 21, 1965 accident. He said at the trial that he complained about pain in his back to Drs. Vial and Brent when first treated by them. However, he admitted testifying on deposition that he complained to Dr. Vial only about his foot, and said nothing to him about his back. He also said on deposition that the first time he complained to any doctor about his back was to Dr. Brent in 1966. However, when his attention was called to Dr. S. J. LoCoco’s report of August 17, 1965, he said he was then having trouble with his back along with leg trouble. The plaintiff laboriously attempted to explain the reason for his conflicting answers, stating that at the time of the fall his ankle was the principal complaint and not his back. He insisted that he experienced pain in his back immediately after the accident, with increasing severity about a month afterwards. Plaintiff said that prior to March 21, 1965, he had recurrence of his old back trouble only occasionally as the result of exertion or strain. He admitted filing an insurance claim with Pan American in which he stated his ailment did not result from his occupation, but contended he did not know the cause of his illness at the time he filled out the form. He pointed out that he had severe pain at the time he lifted the manhole cover in 1955, but was seen by ’his physician only about four times and did not lose any time from work because of his back for the ten years following that accident. He explained that he had no money to pay for his operation, and the Insurance Company of North America had not offered to pay his expenses. Therefore, upon the advice of his attorney, he applied to the Pan American Company for benefits under its policy.
The plaintiff’s complaints of back pain while working for other employers from approximately October, 1965, until September, 1967, were confirmed by two of his fellow union members who also served as his foremen.
Except for the testimony of Dr. Jackson, all of the medical evidence admitted at the trial was in the form of depositions or medical reports.
Dr. James Nelson, who treated the plaintiff on March 22 and 30 and April 6 and 7, 1965, stated in his deposition that Mal-brough did not complain about his back when he saw him for a sprained left ankle and a rash. Dr. David J. Vial’s final report and bill contained no reference to a back complaint.
The plaintiff was referred by Drs. Nelson and Vial to Dr. Walter Brent, an orthopedic surgeon. Dr. Brent’s report of April 7, 1965, mentions only the injury to his left ankle. In his report of April 20, 1965, the doctor related that the plaintiff then complained of pain in his right ankle and contended he previously had complained to him of back pain. Dr. Brent said he had no recollection of this, although *413 it might have been mentioned in passing. In his opinion the plaintiff’s back complaints were subjective only, and he had recovered from the injury to his left ankle. No additional treatment was needed.
The medical report of Dr. S. J. LoCoco dated August 17, 1965, reflects that the plaintiff’s chief complaint was a torn ligament of his left ankle that resulted from the accident of March 21, 1965. However, he also complained of low back pain radiating to both legs which had occurred since he was placed in the walking cast, and felt he would fall if he stood for longer than one-half hour. Dr. LoCoco stated that he did not find sufficient objective symptoms to indicate anything seriously wrong with Malbrough’s back. He recommended simple analgesics and remedial exercises, and saw no reason why plaintiff would not be able to resume his employment without limitations.
The medical report of Dr. Vernon R. Kroll stated that when he examined the plaintiff on March 2, 1966, the latter informed him that he had noticed back pain following the fall on March 21, 1965, which gradually became worse. In his opinion there was no residual disability in the plaintiff’s left ankle. The doctor felt Mal-brough had symptoms referable to his back, but he could not relate them to his ankle injury at that time. However, it was possible that following the ankle injury and the use of a cast, he developed symptoms in his back as a result of an aggravation of a pre-existing arthritic condition.
Dr. John D. Jackson testified that he first examined Malbrough on December 11, 1967, at which time he was complaining of low back pain, accompanied by pain in the left lower extremity and sometimes in the right leg, which had gradually increased in severity. Dr. Jackson testified that myelo-grams were performed, followed by a lamenectomy on January 3, 1968, which disclosed a bulging, degenerated L-4 disc that he removed. He explained that the plaintiff has continued to have muscle spasm off and on which may necessitate a spinal fusion later. Dr. Jackson said it is possible the plaintiff had a back condition prior to the fall on March 21, 1965; that he could have developed a degenerated disc that progressed throughout the years to the point where he required surgery without any injury in the March, 1965, accident. He said that Malbrough told him he had had pain in his low back for many years. He could not say with certainty that the disc condition was aggravated to any degree by the accident in 1965. He might have continued having the symptoms solely from the degenerated disc. Had there been an aggravation of the condition by the fall, the doctor would have expected an onset of low back symptoms at the time. Dr. Jackson further explained that no one knows the exact cause of disc degeneration. He could not say just how long the plaintiff’s disc had been degenerated, but x-rays indicated it had been going on for several years. He admitted that trauma superimposed upon such a disc could have aggravated and accelerated the degenerative process and caused further damage. However, the doctor could not definitely say that the fall aggravated his condition from no disability to disability, and he would not give such an opinion. He estimated plaintiff was left with a 25% disability of the body as a whole.
The trial court concluded that Malbrough had not established to a sufficient degree of probability that the accident of March 21, 1965, caused or aggravated the condition for which he was operated, and dismissed his suit.
The law is well settled that in workmen’s compensation cases the burden is upon the plaintiff to establish a disability resulting from injuries sustained in the course and scope of his employment or the aggravation or acceleration of a preexisting condition which caused the disability. Sanchez v. Haase Construction Company, 235 So.2d 231 (La.App. 4 Cir. 1970); Clevinger v. Continental Insurance Com *414 panies, 211 So.2d 718 (La.App.2d Cir. 1968); Poindexter v. South Coast Corporation, 204 So.2d 615 (La.App. 4th Cir. 1967); Teekell v. Campbell Construction Company, 160 So.2d 447 (La.App.2d Cir. 1964); Davis v. Western Casualty and Surety Company, 159 So.2d 309 (La.App.2d Cir. 1963).
The factual situation in Sanchez is analogous to the case before us. This court pointed out therein that the plaintiff bears the burden of proving the cause of his disability by a preponderance of evidence, which is more than mere probability and speculation. While an employee does not have to prove causal connection between his disability and the accident to an absolute certainty, he is required to establish this to the extent of a reasonable probability. Beasley v. Service Foundry Div. of Avondale Ship., Inc., 235 So.2d 139 (La.App. 4th Cir. 1970).
The trial court based its conclusion that Malbrough had failed to carry the burden of proof on the discrepancies in his testimony as to when he first complained of pain in his back; the fact that he had experienced pain in his back from time to time since 1955; the testimony of Dr. Jackson to the effect that the plaintiff’s degenerated disc condition had been progressing for several years and it could be merely a degenerative process or caused from age; and the plaintiff’s uninterrupted employment until Dr. Jackson recommended surgery. We must add that no physician involved in this case indicated he thought there was any more than a mere possibility that the plaintiff’s disc condition was caused or aggravated by the accident of March 21, 1965.
Our analysis of the record and the law convinces us that there was no manifest error in the trial judge’s decision.
For the foregoing reasons the judgment appealed from is hereby affirmed at appellant’s cost.
Affirmed.