186 So.2d 349 (1966)
Robert GRIFFIN
v.
EMPLOYERS' LIABILITY INSURANCE COMPANY.
No. 2187.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 1966.
*350 Frank S. Normann, Normann & Normann, New Orleans, for plaintiff-appellee.
Drury & Lozes, James H. Drury, New Orleans, for defendant-appellant.
Before McBRIDE, REGAN and HALL, JJ.
McBRIDE, Judge.
This is a workmen's compensation suit. Robert Griffin, a sixty-nine year old negro man, during the course and scope of his employment as janitor with defendant's insured, suffered a cerebrovascular stroke stemming from either hemorrhaging or a thrombosis, as a result of which he is paralyzed on the right side and is unable to do work of any reasonable character. He sues for and was awarded compensation as for total permanent disability at the rate of $32.50 per week, and defendant has appealed. The only question presented is whether plaintiff's stroke constitutes a compensable accident. Plaintiff contends it does. Defendant's position is that the stroke resulted from natural causes and that there was no causal connection between the duties of the employment and the stroke.
Plaintiff had been employed by Hibernia National Bank in New Orleans as one of the night janitors in its office building for approximately twenty-three years.
On the evening of February 12, 1965, about 9:45 p. m., while performing his duties as janitor, he suffered the stroke. At 5:00 p. m., he had commenced work which consisted primarily of cleaning the elevators, lifting with the assistance of a co-worker sacks of trash and waste paper weighing approximately twenty-five or thirty pounds each, and loading and stacking them on a cart and then pushing the cart to an elevator. The stroke manifested itself just after plaintiff had been engaged in lifting some of the sacks.
Each side produced an expert medical witness, neither of whom treated plaintiff. Dr. H. B. Cummins, an internist appearing for plaintiff, saw him February 15, three days after the stroke and again the day before the trial. Dr. Sam Nadler, the defense expert whose specialty is internal medicine, examined plaintiff on April 5, 1965.
It is conceded by all that plaintiff was a diabetic and afflicted with high blood pressure. In addition to his bodily ailments at the time of the stroke he was emotionally *351 upset because his wife of fifty years had died in his arms a few days before
Dr. Nadler stated that the pre-existing physical condition, i. e., diabetes and high blood pressure, plus the emotional disturbance because of grief, had the effect of adding 10 years to plaintiff's age so, medically speaking, plaintiff was, say a man eighty years old.
Dr. Cummins did not say there definitely was a causal connection between the exertions expended in the occupational duties and the stroke, but from a careful analysis of all his testimony it appears he strongly implies there was, for we find him saying:
"The man was very upset by this, and that in itself I think is a setting that we so often see people have coronaries and strokes on. So that his routine work and this illness did occur in the performance or carrying out of routine work. He and another man were loading stacks of paper or debris, something in one of the buildings, and I think this situation one might consider, I don't say I believe this, but one could conceive that the stress of normal labor was equivalent to unusual stress of the predisposition of the emotional state, and that could have triggered off, I don't say I believe this, but I don't think anybody could prove it one way or another, but I think it is conceivable that normal labor was acute undue stress in the unusual situation he was in. This predisposed him because of history of hypertension and history of diabetes of at least ten years duration. So there are three factors in this case predispose this man to a vascular incident."
The three factors alluded to by the witnesses are, of course, the diabetes, hypertension, and the emotional stress.
Dr. Cummins was asked by the Court:
"Well, in this man's condition at the time then his normal duties of loading and unloading rather light sacks could have triggered it"?
and he answered:
"Possibly was equivalent because of his predisposition, could have been equivalent to unusual stress."
Again Dr. Cummins stated:
"A. All I can say is that it's possible that normal demands of his normal procedure at work could have been equivalent to unusual demands in the situation that he had been in for a week or two.
"Q. Well, let's put it this way, Doctor. Could the normal work, added to his predisposition, have accelerated or aggravated the condition so as to cause this result?
"A. Well, that's what I was saying, that it's conceivable that what normally would be normal demand became relative abnormal demand on this particular individual in the setting he is in physiologically".
Dr. Nadler did not believe that the performance of the work had anything to do with the stroke because there had been no sudden or extraordinary activity which would change plaintiff's vascular-dynamics. Dr. Nadler testified:
"A. * * * Actually, when I was asked to see this man I was specifically limited, asked to determine whether his employment might be playing a role in the development of this vascular disease."

* * * * * *
"* * * At some time or other something is going to happen during the twenty-four hours of a day to an individual. If this event had happened during his sleep, as it not infrequently does, or during a *352 period of eight hours when he was not working, as it not infrequently does, we would not think in terms of the work playing any role. Now, for work to play a role in the development of this disorder one would have to presuppose that first a patient had a rupture of a blood vessel due to a sudden exertional effort of severe and unusual degree.

* * * * * *
"* * * and I think that the development of a stroke like this is natural outcome of degenerative cerebral vascular disorder or process."
The trial judge was of the opinion that Dr. Cummins' testimony proved there was a causal connection between the work load and the stroke and so are we. It is quite true Dr. Cummins would not commit himself to a positive statement that there was a causal connection, but taking a common sense view of his testimony the judicial mind can readily perceive that the doctor thought there was the possibility of the existence of causal connection. In Sharp v. Esso Standard Oil Co., 72 So.2d 601, decided by the late Court of Appeal of Louisiana, First Circuit, we find the following quotation, which is apropos here:
"The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as `might', `could', `likely', `possible' and `may have', coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant's head might have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation. Larson's Workmen's Compensation Law, Vol. 2, § 80.32, page 322."
Ordinarily, to a janitor, the work which the occupation called for in plaintiff's case could not be considered strenuous or even difficult but the work could be extremely hard to a man who is medically speaking eighty years old and in the precarious state of health as was plaintiff, to say nothing of the emotional stress under which he labored.
The terms "strenuous", "heavy" and "excessive", as ordinarily found in the reports of similar cases in referring to the work of a compensation claimant and the conditions in which he performs his duties, are relative. The meaning of the words is not the same as to all persons and under all conditions. In Roberson v. Michigan Mutual Liability Company, 90 So.2d 465, the late Court of Appeal of Louisiana, Second Circuit, correctly said:
"* * * Labor that would be strenuous to a person in poor health, who lacked strength, power and endurance, would not necessarily be strenuous to a strong, physical robust laborer in good health. Work that would be termed `light' for a robust laborer may be most strenuous to one who has lost his strength and health through disease. In applying these terms, consideration should be given to the facts and circumstances surrounding a person's activities, particularly as to his health, strength and ability. In Roberson's condition, any labor, however slight, was heavy and strenuous; it was strenuous to himit was sufficiently strenuous to add *353 an additional load to his already diseased heart to bring about the attack of coronary thrombosis, and ultimately his death."
In R.S. 23:1021 "Accident" is defined as:
"* * * an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen's Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results, for it to be compensable. Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Kraemer v. Jahncke Services, La.App., 83 So.2d 916, 919; Sepulvado v. Mansfield Hardwood Lumber Co., La. App., 75 So.2d 529; Sharp v. Esso Standard Oil Co., La.App., 72 So.2d 601; Stiles v. International Paper Co., La.App., 39 So. 2d 635; Lampkin v. Kent Piling Co., La. App., 34 So.2d 76; Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792; Hill v. J. B. Beaird Corp., La.App., 19 So.2d 295; Biggs v. Libby-Owens-Ford Glass Co., Inc., La.App., 170 So. 273; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Roberson v. Michigan Mutual Liability Company, supra; also many other cases.
We agree with defense counsel that a compensation claimant, as any other plaintiff, is required to make out his case with legal certainty. However, we believe plaintiff has successfully shouldered the burden said rule imposed on him.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.