301 So.2d 701 (1974)
Norma J. BLAZIER, Plaintiff-Appellee,
v.
GEORGIA-PACIFIC CORPORATION, Defendant-Appellant.
No. 4703.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
*702 Joseph Wilson of Gaharan & Richey, Jena, for defendant-appellant.
Long & Peters, by Jimmie C. Peters, Jena, for plaintiff-appellee.
Before FRUGE, HOOD, DOMENGEAUX, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Mrs. Norma J. Blazier against Georgia-Pacific Corporation. The trial judge rendered judgment in favor of plaintiff, and defendant has appealed.
This issues presented are whether plaintiff sustained an injury as the result of a work-connected accident, and if so, whether there is a causal relationship between her present disability and that accident.
Plaintiff contends that she injured her back on February 28, 1972, while she was working as a veneer grader for defendant. Her duties required her to assist in pulling thin sheets of veneer wood, about 8 feet long and 4 feet wide, onto a roller cart or table. Ordinarily three women worked together at one table in performing that operation, but on the above mentioned date Kathryne Ates, one of the women who usually worked with her at the table, was absent, and plaintiff and the other person who worked at that table, Billie Marie Wilson, were performing the work usually done by three employees. Plaintiff stated that the veneer sheets were wet and were unusually heavy on that day, and that for those reasons and the fact that they were short handed, it was necessary for her to work harder on the day she was injured.
Mrs. Blazier testified that before noon n February 28, while she was pulling a wet, heavy sheet of veneer, she suddenly experienced a severe pain in her back, and that she immediately told her co-worker, *703 Billie Marie Wilson, about it. She continued to work with pain the rest of that day and the next day, and she stated that she told her other co-worker, Kathryne Ates, about it on March 1. The pain became so severe on March 1, she said, that she called her supervisor that evening and told him that she would not be able to report for work the next day because of back pain, and that her back had started hurting her while at work. She did not return to work on March 2, and she has performed no work since that time.
Mrs. Blazier's husband and daughter support her testimony that she complained of severe back pain during the night of February 28, and that she has complained of back pain continuously since that time.
Plaintiff went to her own physician, Dr. Bernard E. Doughty, a general practitioner, on March 6 and was treated by him for her back condition from that date until about August 24, 1972. Dr. Doughty had treated plaintiff before the above accident allegedly occurred for a bladder infection which caused her to suffer back pain. He stated that she complained of back pain on March 6, 1972, but that she did not give him a history of an accident or trauma. No x-rays were taken, and his clinical examination was negative as to back injury. He concluded from plaintiff's subjective symptoms that she was suffering pain in her back, however, and he referred her to Dr. Roy H. Ledbetter, Jr., an orthopaedic surgeon, in June, 1972. Dr. Doughty made no diagnosis of plaintiff's condition, but in the first report he submitted on March 9, 1972, he described her condition as "Low back pain aggravated by lifting at work and by bending," although he stated in the same report that her injury did not arise out of her employment. He testified that it was "possible" that her pain was related to a very deep back strain.
Dr. Doughty submitted reports to the defendant-employer each week from March 20 until September 5, 1972. In those reports he showed that Mrs. Blazier had been continuously disabled from work since March 1, 1972, and that it was "indefinite" or "undetermined" when she would be able to return to work again. He described her condition in those reports as being "low back pain," as "chronic lumbosacral strain, with possible recurrent lumbar disc herniation," and as "chronic lumbosacral strain."
Dr. Ledbetter examined plaintiff initially on June 28, 1972, and he treated her for about one year thereafter. The history which he received was that the onset of plaintiff's symptoms occurred while she was at work, although plaintiff explained that she did not slip or fall and that she was not subjected to violent trauma. He found that plaintiff had a slight narrowing of the disc space at the lumbosacral joint, between L5 and the first sacral segment, and he concluded following his initial examination that plaintiff "had experienced a lumbosacral strain which at that time had become chronic," and that he "could not exclude the possibility of there being a disc condition or herniation of the disc." He described her condition as a "mild recurrent disc herniation or protrusion," and as a "mild and recurring disc bulge or protrusion superimposed and in conjunction with the back strain." He testified that "this condition can occur as a gradual deterioration and weakening of the ligaments which controls and which encircles and confines the disc to its normal space, or it can occur as a result of a single injury or as a result of repeated injuries.... so this is not necessarily a condition which is produced by accident or violent trauma, but it can be." He stated that a disc injury can be caused by a sudden twist of the body, and that it is possible that "the whole sequence was initiated" by such an occurrence, although he feels that that would not be the only cause of her present disability. He concluded, finally, that:
"I think this lady falls into the category of gradual attrition over a period of a long time, weakening the disc and weakening *704 the ligament that holds the disc in place rather than where you can specifically state that there was one incident that did it. One violent trauma of heavy lifting or a fall or something of this type."
The evidence shows that plaintiff was able to perform the duties of her employment up to February 28, 1972, the date of the onset of her present back pain, but that she has been disabled from performing those duties continuously since that time. Both of the treating physicians apparently feel that her present disability is due largely to a pre-existing condition of her back, but they agree that a sudden twist of her body could have aggravated her pre-existing condition and made the back symptomatic.
Defendant contends that the evidence fails to show that plaintiff twisted her back during the course of her employment, or that the onset of pain occurred due to any straining or twisting of her body, or any other incident occurring while she was at work. It contends that plaintiff thus has failed to show that an accident occurred, as that term is used in the Workmen's Compensation Act. Plaintiff's coworkers, Billie Marie Wilson and Kathryne Ates, and her supervisor, Donald L. Berg, do not recall Mrs. Blazier mentioning to them on or shortly after February 28, 1972, that she either injured her back on that date or that the onset of back pain occurred at that time. After that date plaintiff submitted a claim for accident and sickness weekly benefits under a group insurance policy covering her and other employees, although she knew that no benefits were due under that policy if she had sustained a work-connected accident. In the attending physician's statement attached to her claim, Dr. Doughty stated that her injury did not arise out of her employment. Plaintiff received payments under that policy for several weeks, and defendant contends that that constitutes a tacit admission on her part that she did not sustain a compensable injury.
The evidence shows, on the other hand, that plaintiff was able to perform her duties up to and immediately before the onset of pain while at work on February 28, 1972, and that she has been disabled since that time. She complained of pain to her family immediately after the "accident" allegedly occurred, she informed her supervisor promptly that she could not return to work, and she has not worked since that time.
The trial judge concluded that plaintiff "did sustain a disc injury on or about February 28, 1972, while in the employment of the defendant which continues to disable her." He was "unable to pinpoint a specific terminal point for the disability," and accordingly he found that she was disabled for an indefinite period of time, and was entitled to recover workmen's compensation benefits during her disability not to exceed 500 weeks.
The plaintiff in a workmen's compensation suit must establish by a preponderance of the evidence that an accident occurred during the course of his employment, and that there is a causal relationship between his present disability and that accident. The factual findings of the trial court are entitled to great weight and will not be disturbed unless found to be clearly erroneous. Matte v. Power Rig Drilling Co., 260 So.2d 19 (La.App. 3 Cir. 1972); Landry v. Employers' Liability Assurance Corp., Ltd., 233 So.2d 624 (La.App. 3 Cir. 1970); Montgomery v. Delta Concrete Products Co., Inc., 290 So.2d 769 (La.App. 1 Cir. 1974).
The testimony of the plaintiff alone in a workmen's compensation case may be sufficient to establish the occurrence of an accident, provided that there is nothing to discredit his account of the accident, and that his statements are supported by the surrounding circumstances. Gray v. Southern Farm Bureau Casualty Insurance Company, 134 So.2d 588 (La.App. *705 2 Cir. 1961); Brister v. Great American Insurance Co., 171 So.2d 769 (La.App. 3 Cir. 1965).
To constitute an accident within the meaning of the Workmen's Compensation Act in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of a violent trauma. An accident may be said to have occurred if a diseased organ or part of the body gives way suddenly while the employee is discharging his usual and customary duties, provided that there was a causal relationship between the sudden giving way of that part of his body, his employment and his resulting disability. Griffin v. Employers' Liability Insurance Company, 186 So.2d 349 (La.App. 4 Cir. 1966); Prater v. Liberty Mutual Insurance Company, 182 So.2d 805 (La.App. 3 Cir. 1966); Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La.App. 1 Cir. 1967).
Despite the conflicting testimony which appears in the record, we conclude that the trial judge did not err in finding that plaintiff sustained a disabling injury as a result of an accident which occurred during the course of her employment. We agree with the trial court that plaintiff is entitled to workmen's compensation benefits.
The medical evidence establishes that plaintiff is disabled, and that it is indefinite as to when she may recover. Under those circumstances she is entitled to recover compensation benefits during her period of disability, not to exceed 500 weeks.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.