339 So.2d 48 (1976)
Mary Lee BROUSSARD, Plaintiff-Appellant,
v.
ACADIA INDUSTRIES, INC., et al., Defendants-Appellees.
No. 5666.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
*49 Cline, Richard & Miller by Jack D. Miller, Rayne, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe by Robert M. Mahony, Lafayette, for defendant-appellee.
Before HOOD, DOMENGEAUX and GUIDRY, JJ.
HOOD, Judge.
Mary Lee Broussard instituted this suit for workmen's compensation benefits against Acadia Industries, Inc., and its insurer, Fireman's Fund American Insurance Companies. The trial judge rendered judgment in favor of defendants dismissing the suit. Plaintiff appealed.
The only issue presented is whether plaintiff's present disability resulted from an accident which arose out of or in the course of her employment.
Plaintiff worked as a bag seamstress for Acadia Industries from February, 1974, until December 24 of that year. She alleges that shortly after reporting for work on or about September 10, 1974, she fell to the floor when a leg of the sewing machine chair on which she was sitting broke. She landed in a sitting position, but she got up immediately after the fall. The foreman of the shop repaired the chair, and plaintiff resumed her work and worked the rest of the day. She continued to work regularly at her job, performing all of her duties in a normal manner, from that time until the end of her working day on December 24, 1974, except for a period of about four days when she was hospitalized during the month of September.
We are convinced that plaintiff fell from her chair, as alleged, but the evidence indicates that the fall occurred almost two weeks prior to the time she alleged it did or that her symptoms manifested themselves several days before the fall.
Mrs. Broussard testified that she experienced pain in her back when the above accident occurred, but that she did not report an injury and she continued to work for the next three or four months despite that pain. She stated that she continued to work for "a couple of days or a couple of weeks" before she sought medical treatment, and she concedes that even then she did not tell her treating physicians that she had sustained an injury in September. She *50 explained that she did not inform anyone about the accident because she felt that the injury was not serious and she was afraid that she might lose her job if her employer knew that she had sustained an injury on the job.
Plaintiff was examined by her family physician, Dr. C. Thomas Curtis, a general practitioner, on September 11, 1974. At that time, she complained of pain "in the left upper quadrant of the abdomen," stating that she had been experiencing that pain for about two weeks. She did not complain of injury to or pain in her back, and she did not tell the doctor that she had sustained a trauma or an accident of any kind. She did not tell him even that she was working. Dr. Curtis diagnosed her condition as "myalgia," or muscle pain, and he prescribed a combination tranquilizer and muscle relaxant. He stated that at that time he considered her back to be "normal." Plaintiff was worried about an internal disease, however, so Dr. Curtis hospitalized her from September 15 to September 18, 1974, "primarily for purposes of evaluation." While in the hospital he treated her for "acute abdominal wall myalgia," and he discharged her after three or four days of treatment "on a diet which was for her stomach, thyroid medication and to continue this combination muscle relaxant."
Dr. Curtis examined plaintiff again on November 18, 1974, two months after he had discharged her from the hospital. On that occasion, Mrs. Broussard for the first time complained of pain in the low back area. She did not tell Dr. Curtis that she had sustained a trauma of any kind. The doctor found objective signs of an abnormal back condition, and he prescribed a muscle relaxant and an anti-inflammatory drug.
Mrs. Broussard sought no other medical treatment until December 25, 1974, when she was examined by Dr. Curtis in the emergency room of a hospital in Rayne. Her complaints at that time were of "severe pain in the right hip." She told the doctor that at about mid-day on Christmas, while in her home, she stooped over and then twisted slightly and sharply as she began to straighten up, and that at that time she felt a sharp pain in the right lower back area which radiated down to the mid-calf of her right leg. The pain became very severe, and she thereupon was brought to the emergency room of the hospital by ambulance. She mentioned no other trauma or accident in the history she gave. Dr. Curtis made a tentative diagnosis of "severe acute sacroiliac strain," and he hospitalized her until January 4, 1975. He concluded that plaintiff had sustained a ruptured disc, and he thereupon referred her to a specialist, an orthopedic surgeon, and he has not treated her since that time.
Dr. Curtis feels, as we understand his testimony, that plaintiff sustained a ruptured disc as a result of the incident which occurred on December 25, 1974, in her home, and that her present disability did not result from the accident which occurred in the course of her employment shortly before September 11, 1974.
Plaintiff was examined by Dr. Eugene J. Dabezies, an orthopedic surgeon, on March 6, 1975. Dr. Dabezies concluded that she had ruptured intervertebral discs at the L4-L5 and the L5-S1 levels, and he performed a procedure known as chemonucleolysis to correct that condition. Plaintiff was hospitalized from April 2 until April 11, 1975, and was seen periodically by Dr. Dabezies thereafter until October 8, 1975. Dr. Dabezies feels that plaintiff has a permanent 10% disability of the body as a whole, and that she will not be able to do the type of work which she was performing immediately prior to December 25, 1974.
The only history which plaintiff gave Dr. Dabezies relating to the onset of her symptoms was the incident which occurred on December 25, 1974. He concluded, therefore, that the injury resulted from the accident which occurred on that day.
Plaintiff called as lay witnesses four members of her immediate family, all of whom testified that she had had no complaints of pain in her back prior to the time that she fell from her chair in August or September of 1974, and that she has complained of back pain since that time.
*51 Plaintiff's work record indicates that she worked regularly, averaging about forty hours per week, during the months of October, November and December, until the end of her working day on December 24, 1974. The owner, the plant foreman and an inspector of the employer company testified that plaintiff worked normally until Christmas Day, 1974, that she did not report an injury at any time, and that she made no complaints during that time, other than the usual minor complaints made by all other employees. The first notice that the defendant employer received of the fact that plaintiff claimed that she had sustained a work connected accident was contained in a letter addressed to Acadia Industries by plaintiff's attorney, dated March 31, 1975, requesting payment of some medical bills incurred by Mrs. Broussard.
The trial judge held that there was "no causal connection between the accident of September, 1974, and the herniated discs." He felt that it was possible for plaintiff to have sustained a disc injury in September, 1974, and for it not to become symptomatic until December of that year. He concluded, however, that that was not probable and that plaintiff had failed to prove a causal connection between the alleged accident and her present disability.
Plaintiff argues that under the facts presented herein she must be presumed to have sustained a disabling injury at the time of the accident which occurred in September, 1974. She contends that defendant has failed to overcome that presumption.
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that the medical evidence shows that there is a reasonable possibility of causal connection between the accident and the disability. Porter v. Augenstein Construction Company, 280 So.2d 861 (La.App. 3 Cir. 1973); Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3 Cir. 1969); Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (La.App. 3 Cir. 1975).
In the instant suit, both of plaintiff's treating physicians felt that her disabling condition resulted from the accident which occurred in her home on December 25,1974, rather than from the accident which is alleged in the petition. That accident, of course, was not connected with her employment. Mrs. Broussard's symptoms of disc injury did not commence with the accident which occurred in September, 1974, and her first treating physician stated that the symptoms following the September accident were not compatible with an injury involving a ruptured disc. Under those circumstances we conclude that plaintiff is not entitled to the presumption that her disability resulted from the September accident.
The factual findings of the trial judge, and particularly those which involve a determination of the credibility of the witnesses, are entitled to great weight, and those findings will not be disturbed unless found to be clearly erroneous.
We find no error in the conclusion reached by the trial judge that there was no causal connection between the accident which occurred in August or September, 1974, and plaintiff's disabling condition. There thus is no error in the judgment which dismisses this suit.
For the reasons assigned, the judgment appealed from is affirmed. The cost of this appeal assessed to plaintiff-appellant.
AFFIRMED.