343 So.2d 405 (1977)
St. Cyr ROMERO, Plaintiff-Appellee,
v.
OTIS INTERNATIONAL and Travelers Insurance Company, Defendants-Appellants.
No. 5784.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
*406 Caffery, Duhe & Davis by J. Louis Gibbens, New Iberia, for defendants-appellants.
William R. Collins, New Iberia, for plaintiff-appellee.
Before HOOD, CULPEPPER and GUIDRY, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by St. Cyr Romero against Otis International and its insurer, Travelers Insurance Company. Judgment was rendered by the trial court in favor of plaintiff, awarding him compensation benefits at the maximum rate during his disability, not to exceed 500 weeks. Defendants appealed.
The issues presented are (1) whether plaintiff's disability resulted from an accident as that term is used in the workmen's compensation statute, (2) whether there was a causal relationship between plaintiff's employment and his present disability, and (3) whether plaintiff is totally and permanently disabled.
Plaintiff contends that he sustained an injury, consisting of a hearing loss caused by acoustic trauma, on February 17, 1975, while working for Otis International, and that as a result of that accident he is now totally and permanently disabled.
Romero was about 61 years of age at the time of his injury. He had worked as a finishing carpenter for Otis International for a period of about 18 months before the alleged accident occurred. Otis at that time was engaged in constructing modular living quarters for the United States Air Force. These living quarters were self-contained units, each of which was designed to house two men. Plaintiff's primary job was to do finishing carpentry work on the units, which included the installation of sheet rock, windows, doors and other trim work. The construction work was performed inside of a large building where it was estimated that as many as 50 units were worked on at one time. The finishing carpentry work took place in a different part of the building from that in which the units were assembled.
On or about February 2, 1975, plaintiff was directed by his supervisors to discontinue his finishing carpentry work on the modular units and to begin assisting other employees in the assembly of those units, which included making the frames and attaching the floors and walls to the frames. His new duties required him to move to a different place in the building and to use an air hammer, a mechanical device which shoots nails into wood by the use of air pressure generated by an electric motor. When an air hammer is operated it makes a loud noise which sounds like the firing of a shotgun. The evidence indicates that the noise is not as loud as that made by the firing of a shotgun, but it is greater than the noise made by the firing of a .22 rifle.
Prior to February 2, plaintiff was required only occasionally to use an air hammer, and his work did not require him to be in the immediate vicinity of places where that type of tool was used. At his new position, however, he was required to use air hammers a substantial part of every day, and it was necessary for him to work inside the modular units with others who also were using the same type tools. The units which were being assembled were located about 4 feet apart inside the large building, and plaintiff was required to do most of his assembly work inside the relatively small units. The working conditions and the close proximity of the units being assembled were such that the noise from the use of the air hammers was very loud. From February 2 until February 17, 1975, *407 plaintiff worked about 12 hours per day at this new position.
Romero reported to work as usual on the morning of February 17, 1975, and at about 9:00 A.M. on that date, while working with an air hammer on the above units, he suddenly began to feel ill, nauseated and dizzy, and he developed a headache. He reported his condition to a plant supervisor who gave him two aspirins and directed him to leave work and to go to a doctor for a medical examination. Plaintiff thereupon consulted his family physician, and thereafter he was examined and treated by other doctors.
Plaintiff testified that prior to February 17, 1975, he had always worked regularly, working long hours almost every day. He stated that he had never had any trouble with his hearing or with dizziness, that he was never bothered with noises or the sound of electric saws, and that he had never experienced difficulty in climbing ladders or working at heights. He testified that from and after February 17, he has had difficulty in hearing, that he cannot stand loud noises or the sound of electric saws, that he experiences dizzy spells frequently and particularly when he hears loud noises, and that he is unable to climb on ladders or to work at heights because of his frequent dizzy spells. He stated that he has tried to resume carpentry work on five or six occasions, but that he has been unable to do so, and that he has not been employed at any time since February 17, 1975.
The lay evidence establishes that Romero was a good worker prior to February 17, 1975, that he worked regularly up to that time, and that he never complained of any trouble with his hearing or with dizziness or loud noises. Since that time, he has complained frequently of noises and dizziness, he appears to get very irritated when loud noises occur, and he often gets dizzy spells. He has not worked since the last mentioned date.
Plaintiff was examined by his family physician, Dr. Burleigh, on February 17, the day on which he first experienced the above symptoms. Dr. Burleigh suspected that plaintiff had a heart condition, and he thereupon referred him to Dr. Burt Bujard, a heart specialist. Dr. Bujard determined that plaintiff's condition resulted from an abnormal condition of his ears, rather than from a heart ailment, and he thereupon referred plaintiff to Dr. Clyde Landrum, an ear, nose and throat surgeon. Neither Dr. Burleigh nor Dr. Bujard testified at the trial.
Dr. Landrum examined Romero on February 24, one week after plaintiff allegedly became disabled. He found that plaintiff had sustained an acoustic trauma, resulting in a nerve damage to the inner ear and a sensory neural hearing loss in both ears. He felt, however, that plaintiff's hearing loss was not of recent origin, but that instead it had developed over a period of months or years. He conceded that it was "entirely possible" that Romero sustained the hearing loss on his job with Otis, but that "the likelihood of sustaining something in two weeks is not very great." Plaintiff did not complain to the doctor of dizziness at the time of the above examination. As we interpret Dr. Landrum's testimony, he feels that there was no causal relationship between plaintiff's employment and his present disability, although he agrees that there is a slight possibility that such a relationship could exist.
Dr. Lee J. Sonnier, an eye, ear, nose and throat specialist, examined and treated Romero from February 26 until May 10, 1975. He diagnosed plaintiff's condition as "bilateral sensori-neural hearing loss, caused by acoustic trauma." He felt that plaintiff had some acoustic hearing loss before February 17, 1975, but that the noise to which he was subjected during his employment by Otis aggravated his prior condition. The injury, according to Dr. Sonnier, caused plaintiff's loss of hearing and the dizziness he experiences. He felt that as of the last day he examined plaintiff, the latter could return to carpentry work, provided that he worked only "on the outside, but not confined inside (a building)," and that he "should stay away from noise as much as he can." The doctor was not able to determine *408 whether plaintiff's dizziness was caused by inner ear trouble, but assuming that it was he felt that plaintiff could not work safely at any height above the floor or ground. In Dr. Sonnier's opinion, plaintiff's present disability occurred gradually, over a period of at least two months, and that the injury was caused by the noise at his place of employment.
Dr. Sonnier referred plaintiff to Dr. Thomas Graves, an ear, nose and throat specialist, because of the latter's wide experience and his sophisticated testing equipment. Dr. Graves examined plaintiff on March 7, November 10 and 19, and on December 17, 1975. He concluded that plaintiff had a "severe bilateral sensori-neural hearing loss," or a severe hearing loss in both ears, more severe in the left ear, and that the hearing loss was permanent. He also found that plaintiff had some dizziness, but he was unable to complete all of his tests because of plaintiff's complaints of pain, and for that reason he was not able to determine whether his dizziness resulted from inner ear trouble or from a central nervous system disorder. Based on his findings, he felt that plaintiff should find some other type of work which would not require him to be around loud noises, such as that made by air hammers and electric saws. He stated that if plaintiff should be subjected to such noises without some protection his condition would get progressively worse. In response to a hypothetical question in which we think the facts were correctly set out, Dr. Graves expressed the opinion that there was a causal relationship between plaintiff's present disabling condition and the loud noises he was subjected to from February 2 to February 17, 1975.
The trial court concluded that plaintiff is totally and permanently disabled, and that his disability resulted from an accident which occurred in the course of his employment. In his reasons for judgment, the trial judge said:
" . . . I am convinced that Mr. Romero did in fact suffer an accident within the meaning of the Workmen's Compensation law, that culminated on February 17, 1975 because of his exposure to the excessive noise in an enclosed place with the use of the air hammers. I further feel that the testimony supports Mr. Romero's claim that he is totally and permanently disabled within the meaning of the law."
The factual findings of the trial judge, and particularly those which involve a determination of the credibility of witnesses, are entitled to great weight, and those findings will not be disturbed unless found to be clearly erroneous. Blazier v. Georgia-Pacific Corporation, 301 So.2d 701 (La.App. 3 Cir. 1974).
A workmen's compensation claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that the medical evidence shows that there is a reasonable possibility of causal connection between the accident and the disability. Broussard v. Acadia Industries, Inc., 339 So.2d 48 (La.App. 3 Cir. 1976).
The facts in Comoletti v. Ideal Cement Company, 147 So.2d 711 (La.App. 1 Cir. 1962), are similar to those presented here. In Comoletti plaintiff was subjected to a series of loud noises, similar to those made by the firing of shotgun shells, as he assisted in "shooting the kilns" to clean out some large ovens where the ingredients of cement were mixed. The court held that he sustained permanent hearing loss caused by acoustic trauma, and that that trauma resulted from the above loud noises.
In the instant suit, we cannot say that the trial judge clearly erred in finding that plaintiff has been totally disabled since February 17, 1975, and that his disability is permanent. Romero worked as a carpenter for at least 10 or 12 years before the above date, and we agree with the trial judge that he was a "semi-skilled" employee. Since he can no longer work with or around electric saws, or other tools which make loud noises, nor can he climb ladders or work at heights *409 because of dizzy spells, we agree that he is totally disabled from doing the type of work he has been performing. The medical experts agree that his condition is permanent. We affirm that part of the trial court's judgment, therefore, which decrees that plaintiff has been totally and permanently disabled since February 17, 1975.
The evidence convinces us, as it did the trial court, that a causal relationship exists between plaintiff's present disability and his employment. Prior to February 17, 1975, plaintiff experienced no difficulty in hearing, no inability to tolerate loud noises and no dizziness. Since the above date, however, he has had a severe hearing loss, and he has experienced dizziness and an inability to cope with loud noises or to work at any appreciable height. The onset of the above symptoms occurred when he suddenly became ill, nauseated and dizzy during the course of his employment on February 17, 1975. The medical evidence shows not only a reasonable possibility, but we think it establishes a strong probability, that there is a causal relationship between plaintiff's present disability and the loud noises to which he was subjected in the course of his employment on and immediately prior to February 17, 1975. Under those circumstances a persumption arises that his present disability resulted from the accident which occurred on the above date. We find that the evidence does not offset or overcome that presumption.
Defendants contend, finally, that plaintiff is not entitled to recover compensation benefits because of his failure to establish the occurrence of an "accident," as that term is used in the workmen's compensation act. They point out, correctly, that the noises to which plaintiff was subjected on the morning of February 17, 1975, were no different from the noises to which he had been subjected during the previous two weeks. The evidence shows that air hammers were being used by plaintiff, and by other employees in that immediate vicinity, when Romero's disabling symptoms first appeared. Defendants argue, however, that no event happened suddenly or violently, and no violence to the physical structure of plaintiff's body took place on the above date. They take the position that plaintiff is not entitled to recover because he did not sustain a "personal injury by accident," as provided in LSA-R.S. 23:1031.
An "accident" is defined in the workmen's compensation act as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." LSA-R.S. 23:1021(1). The act provides that the term "injury" includes only "injuries by violence to the physical structure of the body . . ." LSA-R.S. 23:1021(7).
In construing the above statutory provisions, our courts have held consistently that under some circumstances, when the work of the employee requires physical effort and exertion, it is not necessary that the disabling injury be sustained as the result of a violent trauma.
To constitute an accident within the meaning of the workmen's compensation law, in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of a violent trauma. An accident may be said to have occurred if a diseased organ or part of the body gives way suddenly while the employee is discharging his usual and customary duties, provided that there was a causal relationship between the sudden giving way of that part of his body, his employment and his resulting disability. Blazier v. Georgia-Pacific Corporation, 301 So.2d 701 (La.App. 3 Cir. 1974); Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La.App. 1 Cir. 1967); Griffin v. Employer's Liability Insurance Company, 186 So.2d 349 (La.App. 1966); Gotte v. Cities Service Oil Company, 298 So.2d 920 (La.App. 1974); Prater v. Liberty Mutual Insurance Company, 182 So.2d 805 (La.App. 1966).
In the instant suit, the work which plaintiff was performing when he suddenly became ill and disabled required considerable physical effort and exertion. He was *410 operating an air hammer, which required a great amount of physical effort, and he was working about 12 hours per day. A part of his body, his inner ear, suddenly gave way while he was discharging his usual and customary duties. We have found that there was a causal relationship between the sudden giving way of that part of his body, his employment and his resulting disability. It appears to us, therefore, that the above rule is applicable here.
Defendants, however, rely on and refer us to Gaspard v. PetroService, Inc., 266 So.2d 453 (La.App. 3 Cir. 1972), and Warnke v. Owens-Illinois, Inc., 326 So.2d 881 (La. App. 4 Cir. 1976). We distinguish both of those cases. In Gaspard, the plaintiff was unable to point out any single event which caused his disability or any particular time when a diseased organ or part of his body gave way. He argued only that each vibration of the screening machine which he operated for a period of several months constituted a separate accident. The machine vibrated at the rate of 1750 times per minute. We held that his exposure to those vibrations for several months during the course of his employment did not constitute an accident. In Warnke, supra, the plaintiff was unable to say when her back trouble started. She acknowledged that her alleged disability was not accident related, and her treating physician described her discomfort as a gradual worsening, without any specific onset. In the instant suit, unlike either of the cited cases, plaintiff's injury manifested itself suddenly and unexpectedly during the course of his employment. A part of his body gave way at a specific time, and the evidence shows a specific event which marked the onset of his injury and disability.
Our ultimate conclusion is that plaintiff is totally and permanently disabled, that his disability resulted from an accident as that term is used in LSA-R.S. 23:1031, and that there is or was a causal relationship between his employment and his disability. We thus find no error in the judgment rendered by the trial court.
The judgment appealed from is affirmed. The costs of this appeal are assessed to the defendants-appellants.
AFFIRMED.