HOOD, Judge.
Even Landreneau instituted this suit against The Travelers Insurance Company, seeking to recover workmen’s compensation benefits, penalties and attorney’s fees. The trial court rendered judgment in favor of defendant, and plaintiff appealed.
The determining issue presented here is whether plaintiff’s present disability result *178 ed from an accident which arose out of or in the course of his employment.
Landreneau sustained a heart attack, diagnosed as a coronary occlusion with a myocardial infarction, between 6:00 and 7:00 A.M. on Friday, September 14, 1973. He was at his home getting dressed to go to work when that attack occurred. He has been totally disabled since that date.
The evidence shows that plaintiff had been employed by Manuel Truck and Equipment Company, Inc., as head of its parts department, for more than 15 years before he became disabled. His regular working hours were from 7:00 A.M. until 6:00 P.M. He performed no heavy manual labor, and we find that the duties of his employment required little, or at least only a moderate amount of, physical exertion on his part. He had a helper, and most of the lifting or moving of heavy automobile or truck parts, such as batteries dr tires, was done by his helper or by other employees, although plaintiff occasionally did some lifting when no one else was available to do it. He was in an air conditioned building during at least 80 to 90 per cent of his working time.
Plaintiff testified that he left his employment and returned to his home about 6:30 P.M. on Thursday, September 13, 1973, after an uneventful day. He had done no lifting on September 13, or on any other day that week, and nothing had occurred on that day or during that week which required him to exert himself any more than he normally did on any other day. He did not feel any more fatigued that evening than usual, although he stated that he had had a “dragging” feeling for about 6 months. He slept well that night, and he arose about 6:00 the next morning, September 14, as he customarily did every morning. He proceeded to get dressed to go to work, but shortly before 7:00 A.M., after getting completely dressed except for his shoes, he began to feel ill. He thereupon went back to bed and his family doctor was called about 30 minutes later. The doctor determined that he had sustained an occlusion or an infarction while he was dressing that morning. He has not worked since that date, and defendant concedes that plaintiff is disabled.
Plaintiff was 50 or 51 years of age when the above incident occurred. He was obese and had been suffering from arteriosclerosis and hypertension, or high blood pressure, for at least 12 years before he became disabled. He, in fact, had been treated regularly for high blood pressure since 1961. He was a very nervous or tense person, and had been taking tranquilizers “off and on” because of that condition for several years. In December, 1968, he sustained a relatively severe heart attack, described as an “acute posterior infarction of the heart,” and as a result of that attack he was off work for one month and he performed only light duties for four or five months thereafter.
This suit was instituted on December 12, 1973. Plaintiff contends that the heart attack which he sustained on September 14, 1973, was the result of stress suffered during the course of his employment. He testified that he often took his work home with him mentally, meaning that he tended to worry about his job even when at home. He stated that he had been under greater mental stress since June, 1973, when his employer bought the stock of merchandise of another company, explaining that it became his responsibility to inventory the new stock and to merge it with the stock of parts previously owned by his employer.
The record shows that Landreneau sustained another heart attack in November, 1974, while this suit was pending.
Plaintiff has been under the treatment of Dr. J. J. Stagg, a general practitioner, since the date he sustained his second heart attack in 1973. Dr. Stagg, in fact, has been treating plaintiff for high blood pressure and for his heart condition since 1961. The doctor stated that there was a “possibility” that the stress of plaintiff’s work contributed to his present disability, but he refused to state that there was a “reasonable medical probability” of a causal connection between his job and his 1973 heart attack.
Dr. Benjamin O. Morrison, a specialist in internal medicine, treated plaintiff for a *179 brief period of time, beginning October 30, 1973, while he was hospitalized. He felt that the mental stress plaintiff was under contributed to his eventual heart attack, but he testified that the stress or tenseness exhibited by plaintiff could have been caused by many factors not connected with his work. For that reason Dr. Morrison would not state that the stress of Landre-neau’s work was the probable cause of his infarction. He explained that there are “too many factors that can cause an infarction, not just you know, nervous stress.”
Dr. Rodney E. Landreneau, Jr., a general surgeon, treated plaintiff from April 1, 1974, until about May 28, 1974. He stated that plaintiff was a very nervous person, that the stress of his work made him more nervous, and that his nervousness did “contribute to his development of a coronary.” In response to the question of whether plaintiff’s heart attack was the direct result of his work, Dr. Landreneau testified:
“I don’t think it was a direct result of his work. I think it was a direct result of him having heart disease, hardening of an — the arteries in the coronary arterial system of his heart. I think this is a direct cause of his coronary occlusion. There are many contributing factors to the development of arteriosclerosis as far as we know now. The cholesterol level of the blood, hypertension, obesity, a stressful situation or working under a stressful situation and conditions. These are all factors. Also smoking. He was a heavy smoker. These are all contributing factors.”
Finally, plaintiff was examined by Dr. Lawrence P. O’Meallie, a specialist in cardiovascular disease, on November 1, 1974. Dr. O’Meallie was firm in his opinion that there was no causal relationship between plaintiff’s work and the heart attack which he sustained on September 14, 1973. He stated, “I do not believe his job caused his coronary disease, nor do I believe it caused his two myocardial infarctions.” He also testified, “I do not believe that Mr. Landre-neau’s occupation has anything to do with the development of his coronary arteriosclerosis and his two myocardial infarctions and his subsequent disability.”
On the basis of that evidence, the trial judge held “The evidence shows that plaintiff was stricken while at home before going to work one morning; I am unable to see how this can be considered an accident in the course of employment.” He thereupon rendered judgment rejecting plaintiff’s demands.
We have considered the medical testimony, and have decided that it fails to show a causal connection between plaintiff’s work and the heart attack which he-suffered on September 14, 1973. We also have concluded that plaintiff’s disability did not result from an accident which occurred during the course of his employment.
An “accident” is defined in the workmen’s compensation law as “an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.” LSA-R.S. 23:1021(1). The term “injury,” as defined in that act, includes only “injuries by violence to the physical structure of the body.” LSA-R.S. 23:1021(7).
In the instant suit plaintiff was never subjected to a violent trauma, and no incident occurred while he was on the job which could be pointed to as the cause of his heart attack or as the beginning of his period of disability. Our courts have held, however, that under some circumstances a disabling injury may be said to have resulted from an “accident,” even though a violent trauma did not occur.
To constitute an accident within the meaning of the workmen’s compensation law, in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of a violent trauma. An accident may be said to have occurred if a diseased organ or part of the body gives way suddenly while the employee is discharging his usual and customary duties, provided that there was a causal relationship between the sudden giving way *180 of that part of his body, his employment and his resulting disability. Blazier v. Georgia-Pacific Corporation, 301 So.2d 701 (La.App. 3 Cir. 1974); Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La.App. 1 Cir. 1967); Griffin v. Employer’s Liability Insurance Company, 186 So.2d 349 (La.App. 4 Cir. 1966); Gotte v. Cities Service Oil Company, 298 So.2d 920 (La.App. 3 Cir. 1974); Prater v. Liberty Mutual Insurance Company, 182 So.2d 805 (La.App. 3 Cir. 1966); Romero v. Otis International, et al., 343 So.2d 405 (La.App. 3 Cir. 1977).
We have found that in the present suit plaintiffs employment required very little physical effort or exertion. He was not on the job, and he thus was not discharging his usual and customary duties, when his heart attack occurred. And, the evidence fails to show a causal relationship between his employment and the sudden giving way of a part of his body. Plaintiff thus is not entitled to recover under the above rule.
The issue to be determined here is similar to that which was presented in Soileau v. Chet and Kenny’s Auto Parts, Inc., 337 So.2d 604 (La.App. 4 Cir. 1976). The Fourth Circuit Court of Appeal, in rejecting the plaintiff’s demand said:
“Had the heart attack occurred at work, or had it followed closely upon some identifiable beginning at work, plaintiff would recover. But we cannot disagree with the trial judge’s conclusion that work-causation was now shown...."
In Rachal v. Tennessee Gas Pipeline Company, 308 So.2d 459 (La.App. 3 Cir. 1975), which also involved a similar issue, we said:
“We further opine that even though plaintiff’s worry, frustration with his job, work load, and geographical movements with the company during the years between 1966 and 1970, were proven to have kept his blood pressure elevated, nevertheless these conditions did not constitute an ‘accident’ as that term is defined in the statutes and explained in the jurisprudence.”
We distinguish the instant suit from the cases relied on by plaintiff. In Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972), for instance, the claimant sustained a stroke as the result of “emotional shock or excitement” which occurred when he engaged in an angry discourse with his employer concerning his pay. He was on the job at his place of employment when he had the stroke. In Sherman v. Southern Scrap Material Company Ltd., 284 So.2d 71 (La.App. 4 Cir. 1973), and in Johnson v. Employers Mutual Liability Insurance Company of Wisconsin, 250 So.2d 38 (La.App. 3 Cir. 1971), the plaintiffs sustained violent traumas while at work, and their respective disabilities were found to have resulted from those accidents. In Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1968), the plaintiff’s heart began to beat erratically and he almost blacked out and fell while he was at work. Our Supreme Court found that he became disabled as a result of that episode, and that the sudden change which took place in his physical condition at that time constituted an accident.
In the present suit, unlike any of the cited cases, no violent trauma occurred. Landreneau was not on the job or at work when his heart attack occurred. He did not experience an emotional shock or any excitement at or before the time he had the attack. No incident occurred during the course of his employment which marked the time when his period of disability began. And, the evidence does not show a causal connection between his work and the occlusion or infarction which he suffered on September 14, 1973.
We conclude that there is no error in the judgment rendered by the trial court which rejected plaintiff’s demands.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.