ELLIS, Judge.
This suit for workmen’s compensation benefits was brought by Ulas M. Williams against his employer, Southern Builders, Inc., and its insurer, American Insurance Company, alleging that he was permanently and totally disabled as a result of an alleged accident which happened on October 11, 1976. Mr. Williams died on June 3, 1977, and his wife and minor daughter were substituted as parties plaintiff. After trial on the merits, judgment was rendered in favor of plaintiffs for death benefits, medical expenses and burial expenses, and defendants have appealed.
The incident which precipitated this lawsuit is described by the stipulation of the parties as follows:
“6
“On October 11,1976, plaintiff arrived at the jobsite about 6:15 A.M. and appeared in good health making no complaints as to pain, disability or discomfort. He and his co-workers sat, talked and smoked for twenty or thirty minutes.
“7
“Plaintiff was then instructed by his supervisor to go to work and accordingly then stood up and walked toward the ‘water shed’ preparatory to filling the water containers. Plaintiff walked a distance of approximately forty to fifty feet and upon reaching the shed door, walking in a normal fashion and while preparing to open the door, collapsed and fell backwards. He did not trip, nor fall, nor did he strike his head. He merely stopped for a second when reaching the door, then passed to unconsciousness.”
It is not questioned that the above incident was caused by a ruptured aneurysm of the anterior connecting artery of the brain, or that Mr. Williams’ subsequent disability and death resulted therefrom. The main factual question presented to our trial judge was whether Mr. Williams’ disability and death were job related.
The trial judge summarized the medical evidence and resolved the question as follows:
“There was considerable medical testimony submitted by the respective parties bearing on the question of whether Williams’ disability was job related or not. Dr. Thomas Flynn testified at length justifying his belief as to why he thought Williams’ condition was precipitated by his job activities, although admittedly this evaluation remained constant despite a substantial change in the history furnished him concerning the circumstances surrounding the incident. He agreed, as did all of the physicians consulted, that a spontaneous subarachnoid hemorrhage is generally due to a weakness in the arterial system in the nature of a congenital defect. He felt that any minimal elevation in the blood pressure of the subject could initiate a blow out of the artery causing the hemorrhage of the brain. It was, therefore, his opinion that any event, such as the act of rising and walking a moderate distance, would tend to elevate the blood pressure, thereby putting pressure on the weak spot in the artery resulting in a rupture. Dr. Flynn *581 made a point to suggest that Williams’ act of getting up produced a Valsalva effect which causes an immediate rise in a person’s blood pressure counteracting the normal effect of gravity. In conclusion, it was his opinion that whatever event that occurred during work contributed to and precipitated the injury.
“Another medical witness of the plaintiff, Dr. James E. Hand, an internist, testified that he treated Williams at the request of Dr. Flynn for a chemical abnormality in the patient’s blood which caused him to be swollen and edematous. He said that there is a corollary between blood pressure and a ruptured aneurysm. He was also of the opinion that the act of getting up would produce a small rise in the blood pressure. However, he felt that the Valsalva effect would not be initiated by the act of rising, but rather by a straining effort. Dr. Hand shared in the opinion of Dr. Flynn that only a modest amount of exertion resulting in a rise in blood pressure would precipitate a ruptured aneurysm.
“The defendants submitted Dr. Richard Levy, a neurosurgeon, as an expert in the case. His testimony and conclusions were based upon a review of the available medical records in the case as he admitted that he had not examined the patient. He stated that somewhere in point of time the weak spot in the blood vessel will give way and that Williams’ activities had no causal relationship to the rupture of the aneurysm at the base of the brain. Dr. Levy stated unequivocally that the act of rising itself or walking causes no rise in blood pressure. He further stated that the Valsalva effect affects veins and not arteries as is the case with a ruptured aneurysm. Finally, it was his opinion that there is a strong indication that spontaneous ruptures of aneurysms are due to unspecified circumstances and occur ‘randomly’. It was Dr. Levy’s opinion that the activities of Williams immediately prior to his collapse did not precipitate his disability and were not job related.
“Dr. Harris A. Lappin, a cardiologist, joined Dr. Levy in his opinion as to the effect of the act of rising upon the blood pressure. He said that while there may be a measurable increase in the blood pressure, the elevation is not significant. Consequently, he was of the opinion that the mere act of rising and walking unhurriedly a short distance is a random activity which in itself would not precipitate the rupture of an aneurysm.
“Counsel entered into a stipulation to the effect that should Dr. John Clifford, a neurosurgeon associated in practice with Dr. Flynn, be called to testify for the plaintiff, his opinion would be essentially the same as Dr. Flynn, more particularly as it concerns the issue of ‘causation’. Further, it is stipulated that if Dr. Edward S. Connelly, a neurosurgeon practicing in Orleans Parish, be called to testify for the defendants, his testimony would be in accord with that of Dr. Levy insofar as it concerns the issue of ‘causation’. “With this wealth of conflicting medical testimony, the Court finds it more reasonable to adopt the opinion of Dr. Levy that the modest amount of exertion engaged in by Williams prior to his collapse was not sufficient to be a precipitating factor in the rupture of his aneurysm, but that the rupture was merely a random event which spontaneously occurred without a known cause. This is the same logic which applied to the instance where part of an iceberg breaks off at sea. More often than not, it is due to the wages of time and ever constant wave action with no specific event influencing the ultimate separation: The Court, in arriving at this determination, is mindful of the presumption accorded the opinion of the treating physician.”
In spite of his factual conclusion that Mr. Williams’ disability and death were not job related, the trial judge then concluded, after an exhaustive review of the jurisprudence, that “the only circumstance required for recovery of benefits is that the condition causing a disability, death or complications leading to death originate on the job during working hours or in close proximity *582 to working hours where there has been no intervening cause initiating the disability or death.” This is not a correct statement of the law.
In Romero v. Otis Intern., 343 So.2d 405 (La.App.3rd Cir. 1977), the court said:
. . An accident may be said to have occurred if a diseased organ or part of the body gives way suddenly while the employee is discharging his usual and customary duties, provided that there was a causal relationship between the sudden giving way of that part of his body, his employment and his resulting disability.”
In Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977), we found the following language:
“A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.”
In view of the factual finding by the trial judge that there was no causal relationship between plaintiff’s employment and his subsequent disability and death, we conclude that the burden of proving the causal connection between the accident, the employment and the disability, imposed by the Romero and Lucas cases, supra, has not been met.
There being no such causal connection, plaintiffs are not entitled to workmen’s compensation benefits.
The judgment appealed from is therefore reversed and set aside, and there will be judgment in favor of defendants, dismissing plaintiffs’ suit at their cost.
REVERSED AND RENDERED.